Shirley M. SCHOOR, Appellant,

v.

Philip Allen WILSON, Respondent.

No. WD 38417.

Missouri Court of Appeals,
Western District.

April 14, 1987.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 2, 1987.

Application to Transfer Denied
July 14, 1987.

John C. Bragg, Kansas City, for appellant.

Roger Guy Burnett, Liberty, for respondent.

Before KENNEDY, P.J., and LOWENSTEIN and GAITAN, JJ.

GAITAN, Judge.

Plaintiff-appellant, Shirley Schoor, filed suit against defendant-respondent, Philip Wilson, for assault. Wilson counterclaimed for assault and for malicious prosecution. The jury returned its verdict in favor of defendant on plaintiff's claim for assault and in favor of defendant on both his assault and malicious prosecution claims. The jury awarded defendant $1000 actual and $3500 punitive damages for the assault claim. On the malicious prosecution claim, the jury awarded defendant $100 actual and $5000 punitive damages.

Plaintiff appeals the trial court's denial of plaintiff's motion for judgment n.o.v. or a new trial on defendant's assault and malicious prosecution claims and plaintiff's motion for a new trial on her assault claim. Specifically, plaintiff challenges the sufficiency of the evidence to support defendant's assault and malicious prosecution claims. Plaintiff also claims that the trial court erroneously instructed the jury regarding punitive damages on defendant's malicious prosecution claim. Finally, plaintiff claims that there was not sufficient evidence to support defendant's self defense instruction in plaintiff's claim for assault. The judgment of the trial court is affirmed in part and reversed in part.

On March 24, 1982, plaintiff and defendant became engaged in an altercation which became the basis for this lawsuit. In order to better understand the events of March 24, 1982, however, it is necessary to understand the background of the parties.

Plaintiff had been employed by Chuck Boyles, Inc. working in various aspects of publishing and distributing a real estate advertising magazine. In June, 1981, her employment was terminated and she start-

ed her own magazine in direct competition with Chuck Boyles, Inc., under the name Town and Country Living. In December, 1981, Judge Sprinkle of the Jackson County Circuit Court found plaintiff to be in violation of a non-compete contract she entered with Chuck Boyles, Inc. Plaintiff was enjoined from going onto the premises of certain real estate companies, including Gas Light Real Estate at 7610 Raytown Road.

In February, 1982, plaintiff sold her business to Richard Miles. However, on March 10, 1982, Judge Sprinkle found that plaintiff was using Richard Miles as her alter ego and was continuing to compete with Chuck Boyles, Inc. Judge Sprinkle therefore found plaintiff in contempt of the December, 1981 court order.

On March 24, 1982, plaintiff accompanied Richard Miles to Gaslight Realty, 7608 Raytown Road. Plaintiff remained in the car while Mr. Miles went inside Gaslight Realty. The car was parked in the parking lot adjoining Gaslight Realty's parking lot.

Defendant, Philip Wilson started working for Chuck Boyles, Inc. in July, 1981. One of defendant's responsibilities included distributing the magazines to various locations. The magazines were left in racks that were marked "courtesy of Chuck Boyles, Inc." or "free Home Buyers Guide." Defendant testified that Chuck Boyle's magazines began disappearing from the racks and Town & Country Living magazines were found in their place.

After the March, 1982 contempt proceeding, Chuck Boyles magazines continued to disappear daily from the racks and Town and Country was found in their place. Defendant had participated in the December, 1981 and March, 1982 proceedings against plaintiff. At those proceedings pictures had been used as evidence to show plaintiff had been present at a real estate office where she was prohibited from going.

On March 24, 1982, defendant had been distributing magazines in the area of Gas Light Realty when he saw plaintiff's car parked in the adjoining parking lot. Defendant approached the plaintiff's car and began taking pictures for possible use in further contempt proceedings. Defendant was using an expensive camera he had borrowed from a detective who was working for Chuck Boyles, Inc. At first defendant saw no one in the car, but after several pictures he noticed movement inside the car. Defendant then walked towards the driver's side of plaintiff's car with the intention of getting a picture of whoever was in the car. Defendant testified that when he reached the car he saw plaintiff lying down in the front of the car.

Plaintiff got out of the car and defendant had his camera raised to his face to get pictures. Plaintiff approached defendant and jerked the camera away from defendant's face. The camera was on a strap around defendant neck and plaintiff continued to pull on the camera with a great deal of force. Defendant testified that he attempted to free himself of plaintiff grasp but was unable to get loose. Defendant was very concerned about losing the camera and film to plaintiff. Plaintiff had a hand on each side of the camera strap and pulled violently on the strap throughout the altercation. Defendant asked plaintiff to let loose of the camera and she said "No, you're not going to get these pictures. I want this film." Defendant tried to pry plaintiff's fingers loose and kept backing away from plaintiff, but plaintiff kept following and pulling on the camera. At one point defendant turned around so that plaintiff was behind him. The force of plaintiff's tugging was choking defendant until he finally was able to turn back around.

Defendant and plaintiff continued struggling and plaintiff told defendant that if he didn't give her the camera she was going to scream rape. Defendant also testified that plaintiff twice told defendant that the only way he could get away would be to hit her. Defendant then began stomping on plaintiff's feet and kicking her, but to no avail. Defendant then struck plaintiff in the jaw with his fist, but she still did not let loose of the camera. Finally, defendant got hold of plaintiff's thumb and bent it back until plaintiff let loose. Plaintiff pulled so hard on the camera that the sturdy, metal con-

necting ring that joined the strap to the camera was pulled apart.

Plaintiff testified that she had encountered defendant several times prior to March 24, 1982 and each time he had shaken his fist at her. She said she was afraid of defendant. She saw defendant in the area on March 24, 1982, so she lay down in the car. She then heard someone trying to open the car door and looked up to see defendant. She got out of the car and held her hand up, telling defendant to stop taking pictures. Plaintiff said that defendant immediately grabbed her thumb and bent it back and began hitting and kicking her. Plaintiff testified that she never grabbed the camera or defendant, but was merely attempting to get away from defendant.

A witness to the confrontation, Mona Angel, testified that she saw defendant hit plaintiff and kick plaintiff. Ms. Angel also said that she never saw plaintiff hit defendant. Ms. Angel did not see the confrontation begin and assumed it was a fight between a husband and wife.

When the fight finally broke up, plaintiff went into the Gaslight Realty office to find Mr. Miles. Plaintiff told Mr. Miles and the realtor about the incident. The realtor asked plaintiff if she wanted the police summoned and plaintiff said yes. Defendant went to his car and drove to a nearby grocery store and called the owner of the camera to tell him about the incident. The Raytown police arrived at the grocery store and arrested defendant. Plaintiff proceeded to the police station and filed a complaint against defendant.

Defendant was released on bail. Subsequently, defendant pled not guilty to the criminal charge and the prosecutor dismissed the charge.

## I.

In her first point, plaintiff claims that the trial court should have entered judgment n.o.v. or granted plaintiff a new trial on defendant's assault claim. Plaintiff sets out four subpoints: (1) there was insufficient evidence to establish an offensive contact; (2) there was insufficient evidence that defendant sustained any damage; (3)

there was insufficient evidence to support the jury's verdict of $1000 actual damages and such verdict was in excess of the $1 nominal damages which defendant pled; and (4) there was insufficient evidence to submit defendant's punitive damage claim to the jury.

■ As to plaintiff's first subpoint, defendant testified that plaintiff grabbed hold of the camera which was around defendant's neck and jerked so violently as to bend the metal connecting ring. Further, in plaintiff's struggle to get the camera from defendant, she pulled so hard on the strap that defendant could not get away and at one point was almost choked. Even though defendant admitted that plaintiff did not kick or hit him, defendant's evidence was sufficient to establish a contact which would be offensive to a reasonable person. See Adler v. Ewing, 347 S.W.2d 396, 402–03 (Mo.App.1961). Carnes v. Thompson, 48 S.W.2d 903 (Mo.1932).

■ Likewise, we also find plaintiff's fourth subpoint to be without merit. Instruction No. 16 instructed the jury that if they found plaintiff's conduct was "willful or wanton and was wrongfully done for the purpose of causing injury or harm ...", they could award defendant punitive damages. The evidence showed that plaintiff violently grabbed the camera which was around defendant's neck, refused to let loose and nearly choked defendant with her pulling on the strap. Plaintiff was trying to take a camera and film which did not belong to her. The jury could properly find from the evidence that plaintiff's actions were willful or wanton and were wrongfully done for the purpose of inflicting pain upon defendant and taking his property (i.e. the film and camera). The jury's award of punitive damages was supported by substantial evidence.

We will discuss plaintiff's second and third subpoints together. In his petition, defendant sought only nominal damages for his assault claim. Defendant put on no evidence of any physical injury or property damage. Defendant did submit to the jury, however, a damage instruction allowing the

jury to award defendant such sum as would "fairly and justly compensate defendant for any damages he sustained." The jury awarded defendant $1000 actual damages.

Defendant admits that the jury's award is not supported by any evidence, but asks this court to reduce the award from $1000 to $1. Plaintiff argues that remittitur has been abolished and that she is entitled to judgment n.o.v. or a new trial.

We first note that defendant was not required to prove damages as an element of his cause of action for assault. *See Conway v. Kansas City Public Service Co.*, 125 S.W.2d 935, 940 (Mo.App. 1938). The fact that the jury found in defendant's favor on his assault claim necessarily meant that he had suffered at least nominal damages. *See Hall v. Martindale*, 166 S.W.2d 594 (Mo.App.1942). Thus plaintiff's second subpoint is completely without merit as a grounds for judgment n.o.v. or new trial.

Plaintiff's third subpoint, that the jury's award of $1000 was not supported by any evidence, is conceded by defendant. However, the parties dispute the appropriate action to be taken to remedy this issue. In *Firestone v. Crown Center Redevelopment Corp.*, 693 S.W.2d 99, 110 (Mo. banc 1985), the Missouri Supreme Court stated that "the doctrine of remittitur is abolished in Missouri." *Firestone's* abolition of remittitur has not been limited to personal injury cases. *See Hoover's Dairy, Inc. v. Mid-America Dairymen*, 700 S.W.2d 426, 437 (Mo. banc 1985); *Smith v. Wohl*, 702 S.W.2d 905, 910 (Mo.App.1985).

Recently, however, the Missouri Court of Appeals for the Eastern District held that the court in *Firestone* did not intend to hold that "only the jury can determine damages no matter how fixed they may be ...." *Halamicek Bros. Inc. v. R & E Asphalt Service, Inc.*, slip op. 50270 (Mo.App. Mar. 10, 1987). The *Halamicek* court held that cases such as *Caen v. Field*, 371 S.W.2d 209 (Mo.1963) and *Allison v. Mountjoy*, 383 S.W.2d 314 (Mo.App.1964) remain viable after *Firestone*.

In *Caen* and *Allison*, the jury awards were increased on appeal under Rule 83.-13(c) (our present Rule 84.14). Rule 84.14 provides that an "appellate court shall award a new trial or partial new trial, reverse or affirm the judgment or order of the trial court, *or give such judgment as the court ought to give*. Unless justice otherwise requires the court shall dispose finally of the case." (emphasis added). In *Allison*, the court explained that corrections may be made to a jury verdict where there is no question of fact as to the amount of damages and only a mathematical calculation is involved or where the trial court could have instructed a verdict for a certain amount. *Allison*, 383 S.W.2d at 320. In *Caen* the court held that the judgment could be amended to include an uncontested item of damages which erroneously was not submitted to the jury. *Caen*, 371 S.W.2d at 215.

In the present case, plaintiff points to no error in the admission of evidence or instructional error in defendant's assault claim. Further, plaintiff does not claim that the jury's award was the result of bias or prejudice. Plaintiff merely complains of the sufficiency of the evidence. We have already decided that there was sufficient evidence to support the jury's finding of liability. Defendant was not required to prove any actual damages and was entitled to nominal damages merely because the offensive contact occurred. Defendant tells us that he has no evidence of actual damages to prove and admits that the award of $1000 actual damages is not supported by the evidence. Defendant asks that the jury's award be reduced to $1 and we see no prejudice to plaintiff in doing so, since liability was clearly established.

We agree with the Eastern District that *Firestone* did not go so far as to take away the power of the courts to reduce a judgment pursuant to Rule 84.14 in situations such as this. To remand the case for a new trial as to the issue of damages would be a futile gesture when defendant states that he has no damages to prove. The judgment on defendant's counterclaim

for assault is reversed and remanded with directions to enter judgment in favor of defendant and against plaintiff for $1.00 actual damages and $3,500 punitive damages. *See McLaurin v. Frisella Moving & Storage Co.,* 355 S.W.2d 360, 364 (Mo.App. 1962).

## II.

In her second point, plaintiff claims that the trial court should have granted plaintiff a judgment n.o.v. or a new trial on defendant's claim for malicious prosecution. Plaintiff sets out three subpoints: (1) there was insufficient evidence to establish the want of probable cause for plaintiff's prosecution of defendant; (2) there was insufficient evidence to establish that plaintiff acted for a purpose other than that of bringing an offender to justice in her prosecution of defendant and (3) the trial court improperly instructed the jury on the issue of punitive damages by submitting Instruction No. 20.

Plaintiff argues in regard to her first and second subpoints that since defendant intentionally kicked and hit her, there was insufficient evidence that plaintiff acted without probable cause and for an improper purpose in filing a criminal charge against defendant.

■ Plaintiff's argument ignores the evidence that she was the aggressor who initiated the altercation with defendant and that defendant hit and kicked plaintiff merely as an attempt to free himself and protect the camera and film in his possession. Certainly the jury could reasonably find that plaintiff acted without probable cause and for an improper purpose in charging defendant with assault when she was the initial attacker and she told defendant he would *have* to hit her to get away from her.

We agree with plaintiff's third subpoint and find that the jury was improperly instructed regarding defendant's punitive damage claim. The trial court submitted Instruction No. 20 which reads as follows:

If you find the issues in favor of defendant on his claim for malicious prosecution, and if you believe the conduct of plaintiff as submitted in Instruction No. 18 was wilful or wanton and was wrongfully done for the purpose of causing injury or harm, then in addition to any damages to which you find defendant entitled under Instruction No. 19, you may award defendant an additional amount as punitive damages in such sum as you believe will serve to punish plaintiff and to deter him and others from like conduct.

In *Sanders v. Daniel Internat'l Corp,* 682 S.W.2d 803 (Mo. banc 1984), the court held that actual malice must be proved to support punitive damages in a claim for malicious criminal prosecution. *Sanders,* at 815. The *Sanders* court suggested the proper instruction, to be given in conjunction with MAI 10.01, to be as follows:

An act or a failure to act is 'maliciously' done, if prompted or accompanied by ill will, or spite, or grudge, either toward the injured person, or toward all persons in one or more groups or categories of which the injured person is a member.

*Sanders,* at 815–16.

Defendant chose to ignore the instruction suggested by *Sanders* because he feared it would confuse the jury. Defendant argues that the definitions of "malice" for punitive damages on his assault claim and on his malicious prosecution claim would have contradicted each other, and that "lay jurors do not think in terms of such legal fictions." In order to avoid this "dilemma" defendant submitted identical punitive damage instructions for both his assault and his malicious prosecution claims. These instructions allowed the jury to award punitive damages if plaintiff's conduct was "willful or wanton and was wrongfully done for the purpose of causing injury or harm."

*Sanders* states that actual malice means "ill will, spite, personal hatred, or vindictive motives", while legal malice "embraces any improper or wrongful motive" *Sanders,* at 807–08. The *Sanders* court further explained that intent to cause the harm is necessary for legal malice while "[h]atred

spite or ill will is necessary to establish [actual malice]." *Sanders*, at 813.

We find that Instruction No. 20 did not follow the substantive law set out in *Sanders*. Instruction No. 20 required the jury to find only legal malice before awarding punitive damages rather than the more stringent actual malice required by *Sanders*. This error was prejudicial to plaintiff and therefore we must reverse. We do not believe the jury would be misled or confused by two different definitions of malice if the instructions were packaged and it was made clear to which claim each definition applied. Defendant was required to use the instructions approved in *Sanders* and MAI in submitting his claims to the jury. *See Chapman v. Duraski*, 721 S.W.2d 184, 188 (Mo.App.1986).

We reverse the judgment of the trial court and remand for a new trial on defendant's malicious prosecution claim. We have considered whether the new trial could be limited to the issue of punitive damages and have determined that a new trial on all issues of defendant's malicious prosecution claim is necessary. Where the facts pertaining to damages and liability are so interwoven and liability is contested, it is prejudicial to not award a new trial on all issues. *See Owens v. Automobile Recovery Bureau, Inc.*, 544 S.W.2d 26 (Mo. App.1976); *Thomas v. Durham Motors, Inc.*, 389 S.W.2d 412 (Mo.App.1965). Certainly the facts necessary to show whether punitive damages should be assessed will be inextricably tied up with the facts relating to liability in a malicious prosecution claim since malice, even though in different degrees, is an element necessary for both actual liability and punitive damages.

### III.

In her third point, plaintiff claims that the trial court erred in not granting plaintiff a new trial on her assault claim because the court improperly submitted Instruction No. 9 to the jury. Instruction No. 9 reads as follows:

Your verdict must be for defendant, Philip Wilson, if you believe:

First, defendant, Philip Wilson, had reasonable cause to apprehend and did apprehend offensive conduct from plaintiff, Shirley Schoor, and

Second, defendant, Philip Wilson, did not create the situation which caused his apprehension, and

Third, the striking and kicking of plaintiff, Shirley Schoor, was in defense and against this apprehended offensive contact, and

Fourth, defendant, Philip Wilson, used only such force as was reasonable and necessary.

Plaintiff claims that there was no substantial evidence that defendant had "reasonable cause for believing he was in danger." Plaintiff also contends that the evidence was insufficient that defendant's acts of self-defense were commensurate with his apprehension of harm. Whether a person has reasonable cause to apprehend that he is in danger is to be resolved upon the facts and circumstances as they appeared to the defendant at the time he committed his acts of self-defense. *See Martin v. Yeoham*, 419 S.W.2d 937, 949 (Mo.App.1967).

Defendant did not hit or kick plaintiff until she began pulling violently upon the camera around his neck. Instruction No. 9 required the jury to find that defendant "had reasonable cause to apprehend and did apprehend, *offensive conduct* from plaintiff ..." and that defendant used only reasonable and necessary force to extricate himself (emphasis added). Plaintiff refused to let loose of the camera strap and at one point defendant was choked by plaintiff's pulling on the strap. Plaintiff did not let loose of the strap even after defendant hit plaintiff in the face and repeatedly kicked plaintiff. The jury could properly find from the evidence that defendant had reasonable cause to apprehend offensive conduct from plaintiff, and that defendant used only such force as was reasonable and necessary. Plaintiff's third point is denied.

The judgment of the trial court on plaintiff's claim for assault is affirmed. The judgment of the trial court on defendant's

claim for assault is reversed and remanded with directions that the judgment be entered in favor of defendant against plaintiff for $1.00 actual and $3500 punitive damages. The judgment of the trial court on defendant's claim for malicious prosecution is reversed and remanded for a new trial.

All concur.