Linda VAN EATON, Respondent,

v.

Roland C. THON, Appellant.

No. WD 40497.

Missouri Court of Appeals,
Western District.

Dec. 20, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 31, 1989.

Application to Transfer Denied
March 14, 1989.

K. Louis Caskey, Kansas City, for appellant.

James B. Jackson, Kansas City, for respondent.

Before FENNER, P.J., and MANFORD and GAITAN, JJ.

GAITAN, Judge.

This appeal is from a jury verdict on a Petition for Damages containing three count: (1) assault and battery; (2) intentional infliction of mental distress; and (3) damages to property.

Appellant, Roland C. Thon contends that the trial court erred on four points: (1) in not directing a verdict for appellant at the close of respondent's evidence as to Count I (damages for personal injury) and Count II (intentional infliction of mental distress); (2) in not accepting the initial verdicts of the jury as to Counts I and II; (3) in submitting instruction numbers 11 and 15, which allowed the jury to assess punitive damages as to Counts I and II, even though appellant objected to the instructions; and (4) by not granting a mistrial or a new trial at the close of all the evidence because of respondent's violation of the court's order prior to trial not to mention the police.

On March 24, 1985, the respondent, Linda Van Eaton, and Tammy Johnson were riding their horses along 9600 View High Drive, Jackson County, Kansas City, Missouri. Respondent admits that she has been riding along this roadway for the past couple of years. Appellant owns a home at 9600 View High drive, Jackson County, Kansas City, Missouri, where the incident occurred.

In the mid-afternoon on March 24, 1985, as respondent and Ms. Johnson were riding along the roadway in front of appellant's residence, appellant yelled for them to get their horses out of his yard. Respondent replied to the effect that they were on a public right-of-way. An argument ensued wherein appellant admittedly struck respondent's horse in the jaw with his fist which caused respondent to lose control of her horse thereby stepping into appellant's yard. The striking of the horse was deliberate and not in self-defense. The horse became "head-shy" after the incident. The appellant threatened to shoot respondent and her horse. He also threw gravel at the back of respondent and her horse as they were leaving the scene of the incident. Additionally, appellant on several occasions after the incident gave respondent "the finger", and on at least one occasion appellant abruptly pulled his car into the path of respondent's car.

On August 25, 1985, respondent filed a three-count petition for damages relating to assault and battery, intentional infliction of emotional distress and property damage (diminution value of the horse). Appellant filed his answer denying the same, and subsequently filed a counterclaim for trespass.

Initially, the jury returned a verdict of zero actual damages on Counts I and II, but assessed $2,000 and $5,000 respectively for punitive damages. There was a bench conference and the jury was instructed that the verdicts for Counts I and II were incor-

rect and were sent back to correct verdicts A and B (Counts I and II). Subsequently, the jury returned a verdict as to Count I for respondent, Linda Van Eaton in the amount of $100 actual damages for personal injuries and $2,000 punitive damages. On Count II, the jury returned a verdict for respondent in the amount of $100 actual and $5,000 punitive damages. On Count III, which is not involved in this appeal, the jury returned a verdict for respondent in the amount of $800 actual and $500 punitive damages.

Appellant first contends that the trial court erred in not directing a verdict for appellant, then defendant, at the close of respondent's evidence as to Count I, personal injury, and Count II, intentional infliction of emotional distress. A motion for directed verdict should only be granted for a defendant "when no issues of fact remain for the jury to decide." *Mercer v. Thornton*, 646 S.W.2d 375, 376 (Mo.App.1983). The granting of such a motion is a drastic measure which "should only be done when all of the plaintiffs' evidence, and the reasonable inferences to be drawn therefrom, are so strongly against plaintiffs that there is no room for reasonable minds to differ." *Id.*

■ In the case at bar, the court was correct in not directing a verdict for appellant on Count I. The testimony given in regard to respondent's assault and battery or personal injury claim states that respondent suffered no actual injury to her person. However, the proof of damages is not required as an element of a cause of action for assault. *See Schoor v. Wilson*, 731 S.W.2d 308, 312 (Mo.App.1987). The record in the case at bar reflects that appellant hit respondent's horse in the head, thereby causing the horse to go out of control and putting respondent in fear of her life. Respondent is at least entitled to nominal damages, although she did not receive any actual injuries. *See Conway v. Kansas City Public Service Co.*, 234 Mo.App. 596, 125 S.W.2d 935, 940 (1938). Therefore, the evidence was sufficient to submit the cause of action to the jury, and the denial of the motion for directed verdict was correct.

■ Count II is the intentional infliction of emotional distress. In order to recover for emotional distress where no physical injury is involved, there must be proof by "expert medical testimony that the emotional distress or mental injury was medically diagnosed and of sufficient severity as to be medically significant." *State ex rel. Benz v. Blackwell*, 716 S.W.2d 270, 273 (Mo.App.1986) (citing *Bass v. Nooney Co.*, 646 S.W.2d 765, 772–773[4] (Mo. banc 1983).) There was no expert medical testimony given in the case at bar, and therefore the appellant's motion for directed verdict should have been granted.

■ Appellant's second point on appeal is that the court erred by not accepting the initial verdicts of the jury in regard to Counts I and II. We disagree. It is well established in Missouri that "[i]f the verdict is found to be ambiguous, inconsistent, or otherwise defective, the jury should be given the opportunity to correct the verdict or to find a new one before such verdict is recorded and made part of the judgment." *Welsh v. Burlington Northern Railroad Company*, 719 S.W.2d 793, 799 (Mo.App. 1986); *Blackman v. Botsch*, 281 S.W.2d 532, 535 (Mo.App.1955); *Brown v. Kroger Company*, 358 S.W.2d 429, 435 (Mo.App. 1962); and *Thorne v. Thorne*, 350 S.W.2d 754, 757 (Mo.1961). A verdict is not final until the jury decision is "submitted to the court, accepted by it and assented to by the jury, and recorded by the court." *Welsh*, 719 S.W.2d at 799. This procedure guarantees the jury ample opportunity to correct any defects and misunderstanding as to the verdict.

In the case at bar, the verdicts were defective in that there were no actual damages assessed for either Count I or Count II, while both counts included punitive damages. In regard to the initial verdicts, the court stated the following:

THE COURT: Ladies and gentlemen, in examining the verdict forms, I'm going to ask you to return to the jury room. Your verdict forms on Verdict A and B are incorrect. Your verdict forms as to Verdict C and D are correct in the way they're filled out, all right? So I'm go-

ing to return to you—ask you to return to the jury room to look again at the instructions as to Verdict From A and B, okay?

The trial judge, in sending the jury back, only pointed out to the jury that the verdict forms were incorrect referring them to the instructions, and carefully refrained from making any suggestions which would influence the jury's final determination. Judge Messina, consequently, did precisely what had been outlined as the proper procedure under the circumstances. The judge simply required the jury to return to reconsider its verdicts after the inconsistency or defect was brought to the jury's attention. *See Burch v. King*, 549 S.W.2d 919, 925 (Mo.App.1977). The judge did not add to the jury's verdict, and therefore the jury's subsequent award of $100 actual damages and $2,000 punitive damages for Count I, and $100 actual and $5,000 punitive damages for Count II was the final judgment. The trial judge was correct in sending the jury back to correct its verdict.

Appellant's third point is that the trial court erred in submitting instruction numbers 11 and 15, which allowed the jury to assess punitive damages as to Counts I and II even though appellant objected to the instructions. This point, in regard to instruction number 15, is moot since the instruction refers to Count II, intentional infliction of emotional distress because the motion for directed verdict should have been granted.

■ The amount of punitive damages must bear a reasonable relationship to the injury inflicted and should punish an individual for outrageous conduct and deter similar conduct in the future. *Hollins v. Powell*, 773 F.2d 191, 198 (8th Cir.1985); *Hoene v. Associated Dry Goods Corp.*, 487 S.W.2d 479, 486 (Mo.1972). The evidence submitted in the case at bar clearly outlines outrageous conduct on the part of the appellant. Appellant's actions were willful, wanton and malicious. He threatened to shoot respondent and her horse; struck respondent's horse in the jaw whereby respondent lost control of her horse; gave respondent "the finger" on several occa-

sions, and on at least one occasion appellant abruptly pulled his car in front of respondent's car. These acts support both malice in fact and actual malice which is directed at an individual involving spite, personal hatred, vindictiveness, and other similar motives. *Sanders v. Daniel International*, 682 S.W.2d 803 (Mo. banc 1984); *Schoor*, 731 S.W.2d at 313–14. Instruction number 11 was correctly submitted to the jury, which allowed the assessment of punitive damages.

■ Appellant's final point is that the trial court erred by not granting a mistrial or new trial at the close of all the evidence because of respondent's violation of the prior court order not to mention the police. We disagree. The only specific reference made about the police was in the direct examination of Tammy Johnson and is as follows:

Q. Okay. After Linda regained control of the horse, where did she go?

A. Back down to the west—the east side of the ditch, towards the street.

Q. Okay.

A. And I believe at that time we decided, you know, we'd better get out of there.

Q. Okay.

A. And go home and call the police.

The witness' reference to the police was a non-responsive answer and indicated that the police should be called; not that the police were actually called. There was no objection made by appellant's counsel to police reference. The failure to object to the testimony waived any error and the jury may give the testimony whatever weight it was deemed entitled. *See Vosevich v. Doro, Ltd.*, 536 S.W.2d 752 (Mo. App.1976).

The judgment of the trial court is affirmed in part and reversed and remanded as to Count II in accordance with this opinion.

All concur.