# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1024

_____

|  |  |  |
|---|---|---|
| Janice Gordon, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | |
| | * | Appeal from the United States |
| City of Kansas City, MO; | * | District Court for the |
| Robert Mohart; Lester Washington; | * | Western District of Missouri |
| Isaiah Pickett; Peter Yelorda; | * | |
| Phillip Dexter Larimer, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted:  October 18, 2000

Filed:  February 12, 2001

_____

Before McMILLIAN, BOWMAN and LOKEN, Circuit Judges.

_____

McMILLIAN, Circuit Judge.

Janice Gordon (appellant) appeals from a final order entered in the United States District Court[1] for the Western District of Missouri granting summary judgment in favor of the City of Kansas City, Missouri, (the City) and various employees of the City

_____

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

(collectively appellees) on her federal and state law claims arising out of the termination of her employment as the head of the City's Animal Control Division. Gordon v. City of Kansas City, No. 98-0951-CV-W-4 (W.D. Mo. Nov. 2, 1999) (hereinafter "slip op."). For reversal, appellant argues that the district court erred in holding that there is no genuine issue of material fact and appellees are entitled to judgment as a matter of law on (1) her First Amendment free speech claim brought pursuant to 42 U.S.C. § 1983 and (2) her state law claims alleging negligent and intentional infliction of emotional distress. For the reasons discussed below, we affirm.

## Jurisdiction

Jurisdiction in the district court was proper based upon 28 U.S.C. §§ 1331, 1367, and 1441. Jurisdiction in this court is proper based upon 28 U.S.C. § 1291. The notice of appeal was timely filed pursuant to Fed. R. App. P. 4(a).

## Background

The following summary of background facts is based upon the district court's summary judgment order, except as otherwise indicated. See slip op. at 1-2 & n.1. In 1996, appellant was the "division head" of the City's Animal Control Division. The same year, the City Manager, Larry Brown,[2] began efforts to implement a city-wide policy known as "transformation," which called for the privatization of some of the City's governmental functions, including some within the Animal Control Division. On

---

[2]According to the parties' briefs on appeal, at all relevant times the City Manager held the highest-ranking appointed position in the City, the Department of Neighborhood and Community Service was under the City Manager's jurisdiction, and the Animal Control Division was within the Department of Neighborhood and Community Service. Appellant therefore ranked several steps below the City Manager. See Brief for Appellant at 8; Brief for Appellees at 5.

or about August 19, 1996, appellant began circulating a petition ("the petition"), which urged "the removal of City Manager Larry Brown and his 'pods' and the return of city service provision to the professional staffs." Id. at 2. Appellant solicited signatures for the petition from within the Animal Control Division and from other departments in the City government. During the morning of August 19, 1996, appellant sent the petition by facsimile from the Animal Control Division to the Public Works Department, and, during her lunch hour that day, she drove to the Department of Conventions and Entertainment to present the petition for more signatures.

On August 21, 1996, defendant Lester Washington, the Assistant Director of Neighborhood and Community Service, and, at that time, the Acting Director of Neighborhood and Community Service, suspended appellant pending further investigation of her conduct in circulating the petition. Washington thereafter recommended that appellant be terminated. Following a hearing, appellant was terminated. She appealed to the Kansas City Personnel Appeals Board, which upheld her termination.

Appellant initiated the present action in Missouri state court. Appellant's complaint alleged, among other things, that she had been terminated for exercising her rights under the First Amendment free speech clause and that appellees had negligently and intentionally caused her to suffer emotional distress. Appellees removed the case to federal court and moved for summary judgment.

In considering appellant's First Amendment claim in the context of appellees' motion for summary judgment, the district court directly addressed the claim on its merits.[3] The district court applied the legal standards established by the Supreme Court in Connick v. Myers, 461 U.S. 138 (1983) (Connick), and Pickering v. Board of

---

[3]Appellees had also moved for summary judgment on the basis of a qualified immunity defense.

Education, 391 U.S. 563 (1968) (Pickering), and previously applied by this court in Shands v. City of Kennett, 993 F.2d 1337 (8th Cir. 1993) (Shands), Crain v. Board of Police Commissioners, 920 F.2d 1402 (8th Cir. 1990) (Crain), and many other cases. See slip op. at 4-8. The district court determined that: "[t]he specific circumstances of this case dictate that the Court give substantial weight to the time, place and manner of [appellant's] speech"; appellant's petitioning activity was "inherently disruptive to . . . work place harmony" despite the lack of evidence of any special need for harmony or any actual disruption of city government operations; and her petitioning activities adversely affected her own "ability to perform her duties and the efficiency of the workplace." See id. at 6-7. The district court concluded:

> In sum, . . . application of the Pickering balance to the case at bar results in a finding in favor of [appellees]. While [appellant's] speech was on a matter of public concern, and even can be seen as having a high degree of public interest, the other factors in the balance are entitled to more weight on the facts of this case and tip the scale in favor of the government as an employer. Accordingly, [appellees] are entitled to summary judgment on [appellant's] § 1983 claim based on her First Amendment right to free speech.

Id. at 8.

On appellant's state law claims of negligent and intentional infliction of emotional distress, the district court observed that, because appellant had suffered no physical injury, she was required under Missouri law to produce evidence "in the form of 'expert medical testimony that the emotional distress or mental injury was medically diagnosed and of sufficient severity as to be medically significant.'" Id. at 9 (quoting Van Eaton v. Thon, 764 S.W.2d 674, 676 (Mo. Ct. App. 1988) (Van Eaton)). The district court held:

> The medical records submitted by [appellant] fail to demonstrate that the emotional distress she alleges was of sufficient severity as to be

-4-

medically significant.  Moreover, the records do not amount to expert medical testimony on this issue. [Appellant] could have produced an affidavit from the treating physician setting forth that the distress was medically significant if that indeed were the case.  Because no such proof exists in the record, the Court must conclude that [appellees] are entitled to summary judgment on [appellant's] claims of intentional and negligent infliction of emotional distress.

Id. (footnote omitted).[4]

The district court granted summary judgment for appellees on each of appellant's claims (some of which are not at issue in the present appeal), and final judgment was entered for appellees.  Appellant timely appealed.

## Discussion

We review a grant of summary judgment *de novo*.  The question before the district court, and this court on appeal, is whether the record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).  Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate.  See Crain, 920 F.2d at 1405-06.

---

[4]In a footnote, the district court also noted that, to the extent appellant's claims of negligent and intentional infliction of emotional distress were asserted against the City and the individual appellees in their official capacities, those claims were barred (subject to some exceptions not applicable in the present case) by the doctrine of sovereign immunity under Mo. Ann. Stat. § 537.600.  See slip op. at 9-10 n.3 (citing, e.g., Aiello v. St. Louis Comty. College Dist., 830 S.W.2d 556, 558 (Mo. Ct. App. 1992)).

*First Amendment free speech claim*

Appellant first argues that the district court erred in holding that appellees are entitled to judgment as a matter of law on her First Amendment free speech claim. In anticipation of appellees' argument to the contrary, appellant begins by defending the district court's threshold determination that the speech in question was "on a matter of public concern, and even [could] be seen as having a high degree of public interest." Slip op. at 8. In support of this determination, appellant argues that the evidence before the district court showed that she had circulated the petition in response to Brown's proposal to implement his "transformation" policy, which called for the privatization of many governmental functions. She maintains that she feared her department would lose jobs and resources, while at the same time be expected to provide better public services. In other words, she contends, she was concerned not about her own job but, rather, about the likelihood that taxpayers would end up paying more and getting less. She also alleges that a citizen's complaint to her department about the quality of City services triggered her thinking about a citizens' petition. Furthermore, she argues, at the time she began circulating the petition, the "transformation" proposal had already been discussed in the news and in churches, which shows that it already was a matter of public concern. See Brief for Appellant at 18-20. Upon review, we agree with the district court that the speech in question – the petition itself and appellant's expressive conduct in circulating it – touched on a matter of public concern.

Appellant argues, however, that the district court erred at the next stage of the Connick-Pickering analysis. See id. at 20-30. She contends that, in weighing her interests as a citizen-employee against those of the City as government-employer, the district court improperly relied on genuinely disputed facts, facts inconsistent with or unsupported by the evidence, and credibility determinations and inferences drawn in favor of appellees. Indeed, she argues, many of the facts assumed by the district court to be true are themselves logically inconsistent. Appellant also maintains that she sufficiently established a causal connection between her protected speech and her

termination, as required by applicable case law.  See id. at 31 (citing Lewis v. Harrison School Dist. No. 1, 805 F.2d 310 (8th Cir. 1986), cert. denied, 482 U.S. 905 (1987)). Appellant concludes that the district court improperly usurped the role of the jury and erroneously granted summary judgment for appellees.

Contrary to appellant's well-presented arguments, we conclude that there is no genuine issue of material fact which undermines the district court's Connick-Pickering analysis.  The district court correctly understood that, according to the Connick-Pickering legal framework, it was required to balance appellant's interest in engaging in the protected speech against the interest of the City in promoting the efficiency of the public services performed through its employees.  Belk v. City of Eldon, 228 F.3d 872, 880 (8th Cir. 2000) (Belk) (quoting Pickering, 391 U.S. at 568).  Factors to be considered in balancing these interests include: (1) the need for harmony in the workplace; (2) the closeness of the working relationship between appellant and her co-workers and the potential impact that the speech in question might have on that relationship; (3) the time, place, and manner of her speech; (4) the context in which the dispute arose; (5) the degree of public interest in the speech; and (6) whether the speech interfered with appellant's ability to perform her duties.  See id. (citing Shands, 993 F.2d at 1344)).  While the Connick-Pickering balancing test presents a question of law for the courts to decide, any underlying facts that are  material and in genuine dispute must be submitted to a fact finder.  Shands, 993 F.3d at 1342.  Moreover, if the government employer cannot produce some evidence showing that the employee's speech *disrupted* the workplace, the court need not proceed to the balancing stage absent special circumstances.  Belk, 228 F.3d at 881 (citing Sexton v. Martin, 210 F.3d 905, 911-12 (8th Cir. 2000)).  "Where there is no evidence of disruption, resort to the Pickering factors is unnecessary because there are no government interests in efficiency to weigh against First Amendment interests."  See id.  This "disruption" inquiry focuses on whether the speech had an adverse impact on the workplace.  See id. (citing Sexton v. Martin, 210 F.3d 905, 911-12 (8th Cir. 2000)).

Proceeding to the disruption inquiry in the present case, it is undisputed that, on or about August 19, 1996, appellant solicited signatures for the petition from her subordinates in the Animal Control Division. At that time, according to appellant's own deposition testimony, she had either direct or indirect control over virtually every aspect of the Animal Control Division's operations, including personnel matters, and she exercised that control with nearly complete autonomy. See Appendix at 96 (deposition of Janice Gordon at 20-22). Therefore, by soliciting the signatures of her subordinates, appellant presented them with a Hobson's choice – they could defy her wishes or they could sign a petition for the removal of the highest-ranking appointed official in the City administration.[5] Under these circumstances, appellant's conduct amounted to an abuse of power and would inevitably have had an adverse impact on the workplace. Thus, while it may be true that the conduct in question occurred largely "off the clock" and did not interfere with day-to-day operations, and while appellant may not have overtly pressured her subordinates to sign the petition, we agree with the district court that the speech in question was inherently disruptive.

We now turn to the balancing of interests, which, as we have noted, presents a question of law for the courts to decide. We emphasize that the Connick-Pickering balancing test is flexible; the weight given to any one factor is dependent upon the specific circumstances of the particular case. Shands, 993 F.2d at 1344. We also are mindful of the well-established principle that a government employer must be afforded wide discretion and control in its management of personnel matters and other internal affairs. See Connick, 461 U.S. at 151. Government predictions of harm, when used to justify restrictions on speech of government employees, are generally afforded greater deference than such predictions when used to justify restrictions on speech of the public at large. See Waters v. Churchill, 511 U.S. 661, 671-75 (1994).

---

[5]One of appellant's subordinates, Dexter Larimer, indicated in his deposition testimony that he felt coerced by the circumstances. See Appendix at 197 (deposition of Dexter Larimer at 63-64).

Applying these principles, we hold, upon *de novo* review, that the district court did not err in concluding that the City's legitimate concerns about workplace harmony and efficiency outweighed appellant's interest in engaging in the protected speech – at the time and place, and, especially, in the manner that she chose. For the same reasons that we agree with the district court that the speech was inherently disruptive, we also agree with the district court that, "[w]hile [appellant's] speech was on a matter of public concern, . . . the other factors in the balance are entitled to more weight on the facts of this case and tip the scale in favor of the [City] as an employer." Slip op. at 8. We therefore hold that the district court did not err in granting summary judgment for appellees on the merits of appellant's § 1983 First Amendment claim.[6]

## *State law claims of negligent and intentional infliction of emotional distress*

Appellant next argues that the district court erred in holding that appellees are entitled to judgment as a matter of law on her state law claims of negligent and intentional infliction of emotional distress. As noted above, the district court granted appellees summary judgment on these claims on the ground that appellant's proffered medical evidence failed to create a genuine issue of fact as to whether her alleged emotional distress or mental injury was sufficiently severe to be medically significant. Id. at 9. In challenging that holding, appellant maintains that she submitted to the district court medical records, among other evidence, showing that she  became depressed and overly anxious, had difficulty sleeping, was forced to take medication, and gained forty pounds as a result of her termination. She also disputes the district court's reliance on Van Eaton, 764 S.W.2d at 676 (holding, under Missouri law, that trial court should have directed a verdict at trial in favor of the defendant on the plaintiff's claim of intentional infliction of mental distress, where "[t]here was no expert medical testimony given in the case"). Appellant emphasizes that, in Van Eaton, the

---

[6]Having disposed of the First Amendment issue on the merits, we need not address the parties' arguments related to qualified immunity.

plaintiff was at least given an opportunity to present evidence to a *jury* to show that the mental injury in question was medically diagnosable and significant. By contrast in the present case, appellant argues, the district court improperly denied her the opportunity to prove the medical significance of her alleged injury to a jury, notwithstanding the fact that some of the evidence she submitted was in the form of medical records.

To state a claim of negligent infliction of emotional distress, appellant was required to plead: (1) appellees realized or should have realized that their conduct involved an unreasonable risk of causing distress; and (2) appellant suffered emotional distress or mental injury that is medically diagnosable and sufficiently severe to be medically significant. See Gibson v. Brewer, 952 S.W.2d 239, 248-49 (Mo. 1997) (en banc) (citing Bass v. Nooney Co., 646 S.W.2d 765, 772-73 (Mo. 1983) (en banc)). To state a claim of intentional infliction of emotional distress, appellant was further required to plead extreme and outrageous conduct which intentionally or recklessly caused severe emotional distress resulting in bodily harm. See id. at 249 (citing Warrem v. Parrish, 436 S.W.2d 670, 673 (Mo. 1969)). Van Eaton and other Missouri precedents firmly establish that, "[i]n order to recover for emotional distress where no physical injury is involved, there must be proof by 'expert medical testimony that the emotional distress or mental injury was medically significant.'" 764 S.W.2d at 676 (quoting State ex rel. Benz v. Blackwell, 716 S.W.2d 270, 273 (Mo. Ct. App. 1986) (citing Bass v. Nooney Co., 646 S.W.2d at 772-74)).

Upon *de novo* review in the present case, we decline to decide whether appellant has established a genuine issue of fact as to the medical significance of her alleged emotional distress or mental injury. More to the point, we hold that appellant's state law claims of negligent and intentional infliction of emotional distress must fail because they are based solely on the assumption that she was unreasonably and unlawfully terminated in violation of her First Amendment rights. In light of our holding that no such constitutional violation occurred as a matter of law, it follows that appellant has failed as a matter of law to put in genuine controversy the allegation that appellees'

conduct "involved an *unreasonable* risk of causing distress" – and, even more so, the allegation that appellees engaged in "*extreme* and *outrageous* conduct which *intentionally* or *recklessly* caused severe emotional distress." Gibson v. Brewer, 952 S.W.2d at 248-49 (emphasis added). We therefore hold that the district court did not err in granting summary judgment for appellees on appellant's state law claims of negligent and intentional infliction of emotional distress.[7]

## Conclusion

For the reasons stated, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[7]Having disposed of these state law claims on the merits, we need not address appellees' sovereign immunity argument and other related arguments raised by the parties on appeal.