**TURLEY MARTIN COMPANY,**
**Plaintiff-Respondent,**

v.

**AMERICAN CAN COMPANY, and Darrel Climer, George Kueckens and Virginia Kueckens, Defendants-Appellants.**

**Nos. 46098, 46133.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Nov. 22, 1983.

Robert C. Jones, Clayton, Mark L. Sandberg, St. Louis, for defendants-appellants.

Edward J. Weakley, St. Louis, for plaintiff-respondent.

PUDLOWSKI, Judge.

Turley Martin Company, respondent, brought this action against appellant American Can Company (American) and appellants Darrell Climer, George Kueckens and Virginia Kueckens (hereinafter "Climer") for services in connection with the sale of real property in Jefferson County, Missouri. A jury awarded actual damages of $30,000 against appellants jointly. Appellants maintain the trial court erred in its instructions to the jury, erred in admitting certain testimony into evidence and erred in denying appellants' motions for directed verdicts. We reverse and remand for a determination of damages.

In November 1977, Ed Johnson of American contacted Bob McCormick, vice-president of Turley Martin, about the possible acquisition of an industrial plant in the St. Louis area. After the search for a plant was unsuccessful, Johnson asked McCormick to find a tract of vacant land on which to construct a new plant. Turley Martin identified sites, met with American representatives and obtained information on utilities, rail service, zoning and topography.

American decided it was interested in purchasing Climer's property. McCormick approached Climer, who indicated he would sell the 30-acre tract for $25,000 per acre. McCormick and Climer calculated the per acre price with commission of 6 to 7 percent to be $26,700 per acre. Climer agreed to pay the commission under this arrangement.

McCormick then spoke with Johnson and explained how the $26,700 figure had been determined. Johnson later asked McCormick if he would object if Johnson directly negotiated a price with Climer. McCormick said he did not object.

Johnson and Climer agreed upon a price of $25,000 per acre if Turley Martin would reduce its commission from $51,000 to $30,000. Johnson called McCormick back to discuss this proposal, but McCormick was out of town. Johnson spoke with Ted Martin, president of Turley Martin, who reluctantly agreed to reduce the total commission to $30,000 to help close the transaction.

Johnson called Climer back to confirm the deal and they agreed American's attorneys should draft the sales contract. Climer later recalled Johnson saying he would "take care of" Turley Martin. Johnson later explained this remark as referring to his intention to give Turley Martin an exclusive listing on the excess property not needed by American Can to help make up for the reduced commission.

The sales contract was prepared by American's attorneys and delivered to Climer by McCormick. The contract did not contain terms about a commission to Turley Martin. During a telephone conversation before the closing, McCormick asked Johnson about his fee. Johnson told McCormick that Climer was to pay it. McCormick then called Climer, who said American was to pay the commission. McCormick wrote a letter to American demanding payment of a 6 percent real estate commission. Johnson wrote back that the commission was the seller's responsibility. McCormick then wrote Climer, but received no reply.

At trial, McCormick gave the opinion that a reasonable fee for his services would be about 6 percent, the usual real estate commission for the sale of improved land in the St. Louis area. He acknowledged, however, that Ted Martin had agreed to accept the lower amount of $30,000 to facilitate the closing of the sale. McCormick testified he expected Climer to pay the commission because it is the typical practice in the real

estate business for the seller to pay the commission.

Martin testified the fair and reasonable value of the services rendered by Turley Martin was from 6 to 10 percent of the sales price, depending on whether the land was improved. Turley Martin sought $44,-250 as a reasonable fee, rather than the $30,000 agreed to by Martin.

Both American and Climer expressly deny ever agreeing to pay a commission to Turley Martin. Climer maintains he never asked Turley Martin to perform any services. Climer argues Turley Martin served strictly as American's agent throughout the transaction.

Turley Martin did not have a written contract with either American or Climer. McCormick testified it was normal and customary in the business to provide services of this nature without obtaining a written contract.

Respondent, by leave of court, dismissed Count I based on contract of its Second Amended Petition before the close of appellants' evidence and submitted its case on Count II based upon quantum meruit.

The jury rendered its verdict in favor of respondent and against appellants jointly for $30,000. The appeals of American and Climer have been consolidated into the present appeal.[1]

■ We first address the principal issue raised as appellant American's second point.

Appellant American claims the trial court erred in giving Instruction No. 7, the damage instruction, jointly as to both appellants American and Climer. Appellant American contends the instruction foreclosed the possibility of separate awards of damages against each of the appellants.

The trial court submitted one damage instruction against both appellants, which read:

INSTRUCTION NO. 7

If you find in favor of plaintiff <u>on plaintiff's claim against defendant American Can Company or defendants Darrel Climer, George Kueckens and Virginia Kueckens as submitted to you in Instructions No. 5 or 6,</u> then you must award plaintiff the reasonable value of the services furnished with 6% interest thereon from April 12, 1978 to September 28, 1979, and 9% interest from September 29, 1979 to May 24, 1982.

The underlined portions are modifications of the prescribed instruction, M.A.I. 4.04, which applies to actions based in quantum meruit.[2]

A modification of an M.A.I. instruction constitutes error, its prejudicial effect to be judicially determined. Mo.R.Civ.P. 70.02(c).

■ In *Murphy v. Land,* 420 S.W.2d 505, 507 (Mo.1967), the court stated, "All deviations from the straight and narrow path prescribed in M.A.I. will be presumed prejudicially erroneous unless it is made perfectly clear that no prejudice resulted." The burden of establishing nonprejudice is on the proponent of the instruction. *Id.* In the present case, the M.A.I. instruction was modified. Respondent has not made it "perfectly clear" that no prejudice could have resulted.

Respondent argues the instruction was not prejudicial because taken together with the separate verdict directing instructions and the verdict form, there was no possibility of confusing the jury. Appellants argue, on the other hand, that it was the very combination of the single damage instruction with the two separate verdict directing instructions and the verdict form that was confusing to the jury. We agree. The verdict form did not provide a way for the jury to award a different measure of damages as to each of the defendants and,

1. It has come to our attention through oral arguments, as well as the legal file, that a separate suit contesting who is liable for the fee is pending in circuit court between the two appellants.

2. Appellant Climer alleges that M.A.I. 29.03 should have been the proper submitted instruction. This is without merit. M.A.I. 29.03 is the proper instruction for a contract action and is inappropriate in a quantum meruit action.

therefore, was prejudicial to either or both of the defendants.

We do not address the propriety of the verdict form. Appellants have not raised that issue in the points relied on for appeal. Appellants did not preserve the question for review. A verdict form is not an instruction. A complaining party must object at the time a verdict form is given to the jury. *Quinn v. St. Louis Public Service Company,* 318 S.W.2d 316, 320 (Mo.1958). Neither appellant complied with this requirement. We hold the damage instruction's modification is a violation of M.A.I. and constitutes prejudicial error. We need not address the appellants' other claims of error because these alleged errors will be dispositive on retrial. Therefore, we reverse and remand for a new trial limited to a determination of damages.

CRIST, P.J., and SIMON, J., concur.