Lena M. **JOHNSTON** and Robert J. Johnston, **Plaintiffs/Respondents,**

v.

Everett R. **LERWICK, M.D.,**
**Defendant/Appellant,**

**and**

**Missouri Baptist Hospital,**
**Defendant/Respondent.**

**No. 50654.**

Missouri Court of Appeals,
Eastern District,
Division One.

Dec. 23, 1986.

Motion for Rehearing and/or Transfer Denied Jan. 27, 1987.

Case Transferred to Supreme Court March 17, 1987.

Case Retransferred to Court of Appeals Nov. 10, 1987.

Original Opinion Reinstated Nov. 18, 1987.

Morris E. Stokes, St. Charles, for Lerwick.

Gary P. Paul, Brinker, Doyen & Kovacs, Clayton, for Missouri Baptist Hosp. and Johnston.

CRIST, Judge.

Appellant (doctor) appeals from a judgment apportioning fault, 80 percent to doctor and 20 percent to respondent (hospital), in a jury-tried medical malpractice case. We affirm.

Plaintiffs sued both doctor and hospital alleging joint responsibility for negligently leaving a metal clamp in plaintiff-wife's body after surgery. Both doctor and hospital filed answers denying any liability to plaintiffs; neither doctor nor hospital filed any pleadings or claims for apportionment of fault between themselves. The jury was given instructions and verdict forms, M.A.I. 4.12 modified, requiring them to apportion fault between doctor and hospital in the event both were found to be negligent.

Doctor asserts instructing the jury to apportion damages is error where none of the parties requested apportionment in their pleadings because (1) apportionment was not an issue absent a request for such, and (2) he was denied an opportunity to introduce evidence relevant to apportionment.

We need not decide the merits of doctor's assertions because he failed to preserve his objections. The record indicates that after an off the record instruction conference and prior to the reading of the instructions doctor made "an objection to each and every instruction given and verdict form given." Plaintiff made the same general objection, and so did hospital. Hospital in addition to its general objection made reference to specific "suggestions, changes and improvements to the instructions" it had made at the instruction conference. Doctor made no such record, and there are no specific objections in the record before us.

On appeal, doctor moved to file a supplemental record consisting of the transcript of doctor's request to the trial court for an affidavit concerning the instruction conference. That motion was remanded to the trial court and the trial court was "directed to enter an order pursuant to Rule 81.14(e) settling whether objections were made" to the apportionment instructions and verdict forms. The trial court's order found simply "that objections were made."

Doctor did not specifically object, on the record, to the apportionment instructions before they were given; nor did he specifically object to the verdict forms, either before they were given to the jury or when the verdict was returned.

■ Objections at trial to the instructions are not required to preserve the issue for appeal; however, the lack of a specific objection is a factor in determining if there is prejudice and thus reversible error. *Cornell v. Texaco, Inc.*, 712 S.W.2d 680, 682[5] (Mo. banc 1986); and *Hudson v. Carr*, 668 S.W.2d 68, 71–2[5] (Mo. banc 1984). There is less leniency in objecting to verdict forms; specific objections must be made at the time the verdict forms are given to the jury. *Turley Martin Co. v. American Can Co.*, 661 S.W.2d 79, 82[4] (Mo.App.1983).

■ Doctor asserts he did make specific objections at the instruction conference. But where his alleged specific objections were not on the record; he had opportunity to object on the record either when he made his general objection before the instructions were given, or when the verdict was returned; he made no further objections to the verdict form; he filed an answer denying each and every allegation of negligence and unskillfulness; and he was

found 80 percent at fault doctor was not prejudiced by the instructions. We cannot condone trial tactics whereby the trial court is not specifically alerted to possible errors in the instructions or verdict forms and is not given an opportunity to correct an error if one exists. *Ideker, Inc. v. Missouri State Highway Com'n*, 654 S.W.2d 617, 623–24[5] (Mo.App.1983). Doctor made a decision to accept the apportionment instructions and it is too late to complain. *See Fowler v. Park Corp.*, 673 S.W.2d 749, 756 (Mo. banc 1984).

Judgment affirmed.

KELLY, J., concurs.

SATZ, P.J., dissents.

SATZ, Presiding Judge, dissenting.

I respectfully dissent.

The record before us consists of a two page transcript and legal file.[1] The record shows respondent hospital failed to file a cross-claim against the appellant doctor. Nevertheless, the trial court instructed the jury to apportion fault between the hospital and the doctor. The doctor made a general objection to the instructions, objecting "to each and every instruction given."

This record creates the two issues before us: (1) did the hospital's failure to plead a cross-claim against the doctor prohibit the trial court from instructing the jury to apportion fault between the hospital and the doctor, and (2) if so, is the doctor now precluded from questioning the giving of the apportionment instruction because he failed to make a specific objection prior to or contemporaneous with the instruction being given.

The majority addressed the latter issue. I will address it first. The resolution of this issue depends upon the present viability of Rule 70.03, and the viability of this Rule, in turn, depends upon how the Rule

has been affected by *Hudson v. Carr*, 668 S.W.2d 68 (Mo. banc 1984), *Fowler v. Park*, 673 S.W.2d 749 (Mo. banc 1984) and their progeny. The majority, I believe, finds the effect was fatal. I believe the effect was less serious. Rule 70.03 is not quite dead. *See Cornell v. Texaco*, 712 S.W.2d 680 (Mo. banc 1986).

Rule 70.03 provides:

Counsel need not object to any instructions to be given at the request of any other party or by the court on its own motion or to the refusal of any instructions requested by such party.[2]

This language seems to be clear and straightforward. Under it, the doctor had no duty to object to any instruction prior to or contemporaneous with the instruction being given to the jury. The obverse would also seem to be true. The doctor had the privilege to remain silent. Thus, it would seem the doctor could suffer no adverse consequences from exercising this privilege. Not quite so.

In *Hudson v. Carr*, 668 S.W.2d 68, 71 (Mo. banc 1984), the Court acknowledged that "[c]ontemporaneous objections to instructions are not required to preserve claims of legal error (Rule 70.03)", but the Court warned:

[the] failure to raise the issue during trial or to request a modification may be considered in determining whether a variation from MAI is prejudicial. This is especially so when the court gives a text instruction in express terms and the deviation consists in a failure to modify it. If a defect is not readily apparent to alert counsel preparing to argue the case, there is very little likelihood that the jury will be confused or misled." *Id.* at 71–72.

Then, in *Fowler v. Park, supra,* the Supreme Court again addressed Rule 70.03

---

1. Other portions of the record on appeal were stricken.

2. The entire Rule reads:
   Counsel need not object to any instructions to be given at the request of any other party or by the court on its own motion or to the refusal of any instructions requested by such

party. Specific objections to instructions shall be required in motions for new trial unless made at trial. The making of objections during trial shall not preclude making additional objections to the same or other instructions in the motion for new trial. No general objection to instructions is required.

and acknowledged its viability. As interpreted by the Eastern District, *Fowler*

> set forth a series of considerations for the courts to utilize in determining whether a variation from the mandates of MAI is prejudicial. Included as one basis for a finding of non-prejudice is 'sandbagging' in which counsel remains silent at the instruction conference in the hope that his opponent will request an erroneous instruction. *Points v. Dzur*, 713 S.W.2d 634, 635 (Mo.App.1986).

As to the effect of *Hudson v. Carr* and *Fowler v. Park*, we, in the Eastern District, said these cases effectively reversed

> the presumption of prejudice from MAI deviations where no objection is raised at trial. This is based upon the reasoning in those cases [*Hudson* and *Fowler*] that if counsel failed to detect the error its prejudicial impact must be minimal, and if counsel noted the error and remained silent he has waived any objection he may have to a correctly instructed jury. *Points v. Dzur, supra* at 635.

We even questioned the continuing viability of Rule 70.03 in light of *Hudson* and *Fowler*. *Koenig v. Babka*, 682 S.W.2d 96, 99–100 (Mo.App.1984). Our colleagues in the other District Appellate Courts and members of the bar have also attempted to find the true meaning and effect of *Hudson* and *Fowler*. *See, e.g.*, McCarter and Behr, *MAI Error After Fowler v. Park Corp; Prejudicial Or Not?*, 41 Mo.Bar Jnl. 308 (July/Aug.1985). Although I am not persuaded by the reasoning in *Hudson* or *Fowler*, I am constrained to follow and apply it. Thus, I add my own interpretation of *Hudson* and *Fowler* to the growing list of interpretations.

*Hudson v. Carr* simply warned the failure of counsel to specifically object to an instruction may be used to determine whether a variation from the MAI was prejudicial. Thus, the total protection previously perceived to have been afforded by Rule 70.03 was no longer total. The exact dimensions and reach of this warning, however, were not defined.

*Fowler v. Park*, as I understand it, did not increase the dimensions or extend the reach of *Hudson v. Carr*. In *Fowler*, the trial court "improperly" defined the standard of care in terms of the "highest degree of care" rather than "ordinary care." On appeal, the majority of the Supreme Court characterized defense counsel's failure to object to this impropriety as "a patent illustration of 'sandbagging', in which counsel remains silent at the instruction conference in the hope that his opponent will request an erroneous instruction." *Id.* at 756. But the majority specifically acknowledged the continuing viability of Rule 70.03 by stating:

> "In most instances the law requires counsel to speak out in time to permit correction of trial error. *Present Missouri practice does not require this for claims of error in instructions. Rule 70.03 condones sandbagging.*" *Id.* at 756. (Emphasis added).

At this point in *Fowler*, the majority of the Court did nothing more than criticize its own Rule for preventing it from penalizing counsel for failing to object to the instructions in question. However, as the Court noted, "counsel ... went beyond the simple withholding of an objection." *Id.* at 756. The Court found counsel used the word "negligence" in his converse instructions and failed to offer a definition of negligence which differed from plaintiff's definition. From this the majority concluded: "It is, therefore, appropriate to find a waiver of further definition [of negligence] under these circumstances." *Id.* at 756.[3]

Thus, on its facts, *Fowler* made no basic change in the law. Waiver was still the intentional relinquishment of a known right or privilege. Defense counsel, in *Fowler*, waived his privilege under Rule 70.03 by using and, in effect, adopting plaintiff's definition of negligence. This is significantly different from concluding his failure

---

**3.** The majority also noted "plaintiff, ..., argued in terms of ordinary care and defendant could surely have accepted and joined in this definition." *Id.* at 756. Query: Does this mean the jury is to follow oral argument rather than the written instructions, and, may oral argument correct defects in the written instructions?

to object alone waived his privilege. This conclusion would require standing the definition of waiver on its head and defining it to include "the exercise of a known privilege." In addition, the Court in *Fowler* had no need to reverse the presumption of prejudice resulting from a deviation from MAI. I assume that presumption still exists. *See,* e.g. *Cornell v. Texaco, Inc.,* 712 S.W.2d at 682.

Given this interpretation, *Hudson* and *Fowler* would not affect the doctor's exercise of his privilege under Rule 70.03 in the present case. First, the issue of error here does not turn on a variation from the language of MAI. The issue is whether the trial court had the authority to give any instruction on apportionment. If the court lacked this authority, the court's submission of the instruction necessarily was prejudicial, and the doctor's failure to object specifically could not sensibly be used to find the submission was minimal error. *See Hudson v. Carr, supra* at 71–72.

Second, since Rule 70.03 is still viable, *Cornell v. Texaco, supra,* the doctor's failure to object specifically was simply an exercise of his privilege under the Rule. Therefore, I believe the burden is on the hospital to show the doctor subsequently waived his privilege. However, the hospital filed no trial transcript and, thus, failed to show the doctor waived his privilege by some subsequent affirmative act or acts.[4]

Third, even if *Hudson* and *Fowler* reversed the presumption of prejudice when counsel fails to object to a deviation from MAI, the hospital would not prevail. The reversal of the presumption would place the burden on the doctor to show he did not waive his privilege. He did not file a transcript of the trial, and, therefore, it could be argued he failed to rebut the presumption. This argument is weak at best. As previously noted, the issue of error here is not just a variation in the language of MAI. The issue is whether the trial court had authority to give any instructions on apportionment. This is simply a matter of

law, which the trial court obviously resolved against the doctor. Short of showing the doctor offered no instructions and made no closing argument, there could be nothing in the record to show the doctor by an affirmative act or acts effectively adopted this ruling of the court and waived his privilege under Rule 70.03. Therefore, the doctor's failure to provide a record of the closing argument is irrelevant to this issue.

Admittedly, it could be said the doctor waived his privilege under Rule 70.03 simply by offering his own instructions and making a closing argument. This reasoning, however, requires the doctor to preserve his privilege by standing on his general objection. The practical effect is nothing more than holding the doctor waived his privilege by failing to specifically object. Quite simply, this reasoning abrogates Rule 70.03.

However, this is the reasoning which, I believe, underpins the majority's conclusion. This reasoning presupposes Rule 70.03 is dead. If the Rule is dead, then proper respect for process demands a decent, swift and simple burial by the appropriate authority. If the Supreme Court agrees, it should expressly repeal Rule 70.03. As long as it remains, however, I am constrained by my understanding of present Missouri law to follow it. Thus, I find the doctor's assertion of error in his motion for new trial was sufficient to raise this error on appeal.

The second issue still remains: Whether the trial court had the power to instruct on apportionment even though the hospital did not seek apportionment by cross-claim. I believe the trial court lacked this power.

Missouri recognizes the right of contribution based on relative fault of joint tortfeasors. *Missouri Pacific Railroad Co. v. Whitehead & Kales Co.,* 566 S.W.2d 466, 472 (Mo. banc 1978); *Koenig v. Babka,* 682 S.W.2d 96, 99 (Mo.App.1984). *See also Gustafson v. Benda,* 661 S.W.2d 11 (Mo. banc 1983). This right is exercised using

---

**4.** The hospital does not argue the doctor made no objection throughout the trial and, thus, in effect, tried the issue of apportionment by con-

sent. *See, e.g., Travelers Indem. Co. v. Beaty,* 523 S.W.2d 534 (Mo.App.1975).

the procedural devices of impleader, Rule 52.11, or cross-claim against a co-party, Rule 55.32(f). *See Whitehead & Kales,* 566 S.W.2d at 473. Apparently, a defendant may still recover against another who is responsible for plaintiff's injury in a separate cause of action for contribution. *Safeway Stores, Inc. v. City of Raytown,* 633 S.W.2d 727, 731 (Mo. banc 1982).[5]

However, whether an apportionment instruction can be given in the absence of impleader or cross-claim has not been decided in Missouri. Generally, no instruction can be given on an issue not pleaded. *See, e.g., Crites v. Kansas City Public Service Co.,* 190 S.W.2d 924, 926 (Mo.1945); *Cochran v. Jefferson County Lumber Co.,* 132 S.W.2d 32, 38 (Mo.App.1939). To resolve the specific issue here, the hospital urges us to consider the New York case of *Stein v. Whitehead,* 40 A.D.2d 89, 337 N.Y. S.2d 821 (N.Y.App.Div.1972) and certain comments by Professor Siegel in his Practice Commentaries. McKinney's Consolidated Laws of New York C3019:40, C3019:50, C3019:51; C3019:66, pp. 240–242, 260, 263, 290–293 (1974). We do not find this authority persuasive.

Prior to 1972, New York did not permit one defendant to cross-claim against another for contribution. In 1972, New York adopted contribution among joint tortfeasors. *Dole v. Dow Chemical Co.,* 30 N.Y.2d 143, 331 N.Y.S.2d 382, 282 N.E.2d 288 (1972). *Stein v. Whitehead, supra* was tried before the opinion in *Dole* was

handed down. On appeal in *Stein,* the court held it would be unfair to deprive defendant Whitehead of the benefit of the *Dole* rule merely because defendant failed to assert a cross-claim that would have been invalid at the time of its assertion. *Stein v. Whitehead,* 337 N.Y.S.2d at 825.

In discussing both the *Stein* case and contribution under New York law generally, Professor Siegel argues the failure to file a cross-claim should not necessarily preclude an apportionment instruction. However, Professor Siegel repeatedly emphasizes the issue of apportionment should be raised in the pleadings. Siegel contemplates an apportionment instruction will be submitted without pleadings only after a hearing before the trial judge to determine if there is sufficient evidence in the record to support the submission *and* no party will be prejudiced by the submission.[6] Even if we accepted Siegel's argument, the Hospital here failed to show the record contained sufficient evidence to support the submission and failed to show the doctor would not have been prejudiced by the submission. Moreover, if the Hospital could have requested an amendment to conform its pleadings to the evidence, Rule 55.33(b), the record does not show it made this request.

In addition, the Hospital argues § 2(a) of the Uniform Comparative Fault Act (UCFA) requires the judge to direct the jury to apportion the fault of all parties.[7]

---

5. In *Safeway,* the plaintiff recovered against defendant Safeway at trial before the opinion in *Whitehead and Kales* was handed down. After the opinion in *Whitehead and Kales* came down, Safeway sought contribution from other responsible parties in a separate suit. The trial court dismissed this action. On appeal, the court held it would be inherently unfair to deny Safeway's right to contribution because it failed to implead other defendants upon a theory not yet recognized in Missouri. *Safeway,* 633 S.W.2d at 732. In his concurring opinion, Judge Welliver suggested the permissive language of Rule 52.11 should be made mandatory. To date, this change has not been made.

6. New York has subsequently adopted Art. 14, § 1403 which lists the ways a claim for contribution can be asserted. N.Y.Civ.Prac.Law § 1403 (McKinney 1976). Commentators McLaughlin and Siegel stated § 1403 probably

confines apportionment to cross-claim, impleader or a separate cause of action. The validity of *Stein v. Whitehead supra,* is now in question. Practice commentaries C1403:1, p. 378, C3019:50, p. 114 (1986 Supp.).

7. § 2(a), UCFA reads:
   In all actions involving fault of more than one party to the action, including third-party defendants and persons who have been released under Section 6, the court, unless otherwise agreed by all parties, shall instruct the jury to answer special interrogatories or, if there is no jury, shall make findings, indicating:
   (1) the amount of damages each claimant would be entitled to recover if contributory fault is disregarded; and
   (2) the percentage of the total fault of all of the parties to each claim that is allocated to each claimant, defendant, third-party defend-

The illustrations after § 2, however, include only situations where fault was apportioned between the *plaintiff* and one or more defendants. Even if § 2(a) is meant to require apportionment among *all* parties, *Gustafson v. Benda, supra,* only requires compliance with the UCFA "insofar as possible". *Gustafson v. Benda,* 661 S.W.2d at 15. Under present Missouri law, no instruction can be given on issues not pleaded. *See, e.g., Crites v. Kansas City Public Service Co., supra* at 926. Thus, if § 2(a) requires apportionment instructions to be given, this requirement is obviated, in the present case, by the lack of appropriate pleadings.

For the foregoing reasons, I would reverse and remand this cause with directions to the trial court to conform the judgment to this opinion.

ant, and person who has been released from liability under Section 6. For this purpose the court may determine that two or more persons are to be treated as a single party.