LINDSEY MASONRY COMPANY, INC., Appellant,

v.

JENKINS & ASSOCIATES, INC. and St. Paul Insurance Company, Respondents.

No. WD 48212.

Missouri Court of Appeals, Western District.

Feb. 7, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 28, 1995.

Application to Transfer Denied May 30, 1995.

---

Charles D. Lawhorn, Lawhorn, Simpson & Polsley, Shawnee Mission, KS, and Shawn E. DeGraff, Shawnee Mission, KS.

Kevin E. Glynn, Julie J. Gibson, Niewald, Waldeck & Brown, Kansas City.

Before ULRICH, P.J., and LOWENSTEIN and BRECKENRIDGE, JJ.

LOWENSTEIN, Judge.

This appeal arises out of a breach of contract action between Lindsey Masonry Company, Inc. (Appellant) and Jenkins & Associates, Inc. and St. Paul Insurance Company (Respondents). A counterclaim for breach of contract against Lindsey Masonry Company, Inc. filed by Jenkins was also tried.

Respondent Jenkins entered into a contract (prime contract) with the North Kansas City School District for the construction of an elementary school. Respondent St. Paul issued a payment bond to Jenkins for the construction project. Jenkins, as is customary in contract projects, entered into a masonry subcontract with Appellant Lindsey.

After work commenced, Lindsey allegedly encountered difficulties with the water supply and access to the construction project. In addition, Jenkins claimed dissatisfaction with Lindsey's work, culminating in the periodic payments under the construction project being slowed and then entirely stopped. This suit evolved from that conflict to determine what amounts, if any, under this subcontract were due from Jenkins or St. Paul to Lindsey for the work done on the project.

At trial, the jury returned the verdict in favor of Jenkins on both the contract claim and the counterclaim. The jury also entered a verdict in favor of Respondent St. Paul Insurance Company. Lindsey appeals, claiming eight points on appeal. The facts in this case are lengthy, and as such, will be included separately with the discussion of each of the points on appeal.

Lindsey claims the trial court erred: 1) by submitting to the jury a duplicate verdict form with the names of the plaintiff and defendant in reverse order, making the returned verdict presumptively prejudicial; 2) by submitting a "substantial performance" jury instruction where neither side advanced that legal theory in its case; 3) by refusing to submit Lindsey's three separate "breach of contract" theories in the verdict directors submitted to the jury; 4) by failing to submit a verdict director for Lindsey on its breach

of contract claim; 5) by submitting Respondent St. Paul's "breach of contract" verdict director in Lindsey's claim against St. Paul; 6) by submitting St. Paul's "vexatious refusal to pay" verdict director; 7) by admitting evidence relating to involvement of the parties on other construction projects; and 8) by admitting evidence of Jenkins' offers of compromise and settlement which it claims are inadmissible in Missouri.

Each point is taken in order of submission.

■ Lindsey first claims the court committed presumptively prejudicial error in submitting duplicate **verdict forms** to the jury because those forms did not allow the jury the opportunity to find for Lindsey but, instead, only allowed a verdict for Jenkins.

The pertinent facts relating to this claim are as follows: At trial, following the submission of all evidence and a lengthy instruction conference, the Court read Instructions 2 through 16 to the jury. The Court did not read the three accompanying verdict forms: A (Lindsey v. Jenkins), B (Lindsey v. St. Paul) and C (Jenkins v. Lindsey). During closing argument, counsel for both Lindsey and Jenkins argued that Verdict Form A applied to Lindsey's claims against Jenkins. After deliberating for several hours the jury came back with a verdict, but had only filled out Verdict Form C, indicating in favor of Jenkins on Jenkins' counterclaim against Lindsey. The court sent the jury back into deliberation and told it not to return until it had filled out all three verdict forms. No objections by either side's counsel were made to the judge at this time.

When the jury returned, it was discovered by the trial judge that the prefatory language in Verdict Form A read "On the claim of defendant Jenkins and Associates Inc., against Plaintiff Lindsey Masonry Company, Inc.", **instead** of "On the claim of plaintiff Lindsey Masonry Inc. against defendant Jenkins & Associates, Inc." The court had counsel approach and the issue was discussed, and it was decided that Verdict Form A and Verdict Form C were duplicates. However, no objections were made by Lindsey's counsel. The court returned the proceedings to open court and the verdict was accepted. However, the court asked both attorneys if

there was anything else it needed to do with the jury regarding this issue before discharging it. Counsel for Jenkins/St. Paul asked for clarification of the parties and claims addressed by Verdict Forms A and C. With regard to Verdict Form A, the court stated:

> There is a typographical error in that someone in preparing Verdict A has inverted the parties. "On the claim of defendant Jenkins and Associates against plaintiff Lindsey Masonry Company, Inc., we the undersigned jurors find in favor of defendant Jenkins and Associates." Someone has provided me with an inverted A and I've used it by mistake.

Counsel for Lindsey had no requests or objections to the Verdict Forms. More importantly, Lindsey's counsel did not ask the court for any curative measures such as curative instructions or sending the jury to back to redeliberate with a corrected verdict form.

Only after the court discharged the jury and after any curative measure were possible, did Lindsey's counsel complain about the Verdict Form. At the very end of the trial (after verdict was accepted and jury excused), Lindsey's counsel admitted that perhaps he wasn't as involved as he should have been with this issue, but nevertheless, asked for a mistrial which the court denied.

On appeal, Lindsey claims the trial court erred in submitting the duplicate form of Verdict A. Lindsey claims such error is presumptively prejudicial, which shifts the burden to Jenkins to prove the jury was not prejudiced by the use of the duplicate form.

Lindsey's sub-points are, more specifically, as follows: 1) prejudice should be presumed from the submission of the wrong verdict form by the trial court; 2) such error harmed Lindsey because the trial court failed to correct the error before dismissing the jury; 3) because the trial judge admitted responsibility for the duplication, automatic harm should be presumed because Lindsey did nothing wrong; 4) the trial court erred in assuming the utilization of the wrong verdict form did not mislead the jury in its deliberation; and 5) since prejudicial error should be presumed by the court's acts, the burden shifts to

Jenkins to prove that no actual prejudice resulted from the wrong jury form.

Although the forms in Lindsey's case did not allow a favorable result, under the peculiar facts here, Lindsey's arguments must fail. There is no dispute by either party that Verdict A was incorrect. Obviously, the prefatory language of Verdict A should have read "On the claim of plaintiff Lindsey Masonry Company, Inc., against defendant Jenkins & Associates, Inc. . . .", unfortunately it did not. What appears to have happened was that Verdict C was duplicated and mistakenly submitted as Verdict A, so in actuality there were two Verdict C's. Lindsey argues that Verdict A was not only "presumptively prejudicial" but did, in fact, cause prejudicial error requiring reversal of the judgment entered by the trial court in favor of Jenkins on that claim.

The main problem with this claim is that a review of the record shows that no objections to the verdict form, nor requests for curative measures, were made to the judge prior to acceptance of the verdict and discharge of the jury. The error was picked up by **Jenkins'** counsel and the trial judge, who conversed in detail about the error before the judge discharged the jury. After it was discovered that the jury had returned its verdict on the incorrect verdict form, two bench conferences and additional discussion on the record concerning the effect of the submission. Lindsey's trial counsel had ample opportunity to complain or ask for a remedy at that time, yet failed to do so. Lindsey's counsel only commented that "A and C are duplicates" during the bench discussion. The discussion continued in open court, and Lindsey's counsel had every opportunity to speak up and, even if the trial judge overruled the objection, to preserve the issue for appeal. Only after the trial judge discharged the jury and after there was no longer anything the Court could do to solve the problem did Lindsey's counsel ask for a mistrial.

■ A party who has an objection to the verdict form must make the objection known prior to the time the court submits the verdict form to the jury. *Turley Martin Co. v. American Can Co.*, 661 S.W.2d 79 (Mo.App. 1983); *Stacy v. Truman Medical Center*, 836 S.W.2d 911, 924 (Mo. banc 1992); *Davis v. Stewart Title Guar. Co.*, 726 S.W.2d 839, 857 (Mo.App.1987); *Johnston v. Lerwick*, 738 S.W.2d 868, 869 (Mo.App.1986). A party cannot stand idly by not making an objection and not bringing to the attention of the trial court it's errors; gamble on a favorable verdict; and then, when the result is adverse, complain. *Reed v. Sale Memorial Hospital and Clinic*, 741 S.W.2d 819 (Mo.App.1987). The purpose for this requirement is to ensure that the trial court is adequately informed and is given an opportunity to correct its errors. *Id.* Under these standards, it is apparent that Lindsey's counsel, knowingly or not, engaged in conduct similar to sandbagging. This is because the error was discovered after the jury had returned with a verdict adverse to Lindsey, but before the jury was dismissed. There were numerous things the trial judge could have done had Lindsey's counsel asked for curative measures. However, even though Jenkins' counsel opened the door, Lindsey failed to voice any concern until the jury was dismissed. Several cases demonstrate the burden given to the complaining party. In *Moran v. North County Neurosurgery, Inc.*, 714 S.W.2d 231 (Mo.App.1986), a medical malpractice case with dual defendants, the court held plaintiff waived any complaint of a verdict form where there was a verdict exonerating physician, but holding surgical corporation liable for medical malpractice where plaintiff made no request for correction of verdict before discharge of jury. *Id.* at 233. No error was committed by failure to give instruction which may be given only if jury attempts to return an erroneous verdict. *Id.*

Similarly, in *Johnston*, supra, another medical malpractice suit against a surgeon and hospital, the appellate court found that the surgeon did not preserve his complaint regarding the verdict form for review because he did not make a specific, timely objection **at trial.** 738 S.W.2d at 870. The surgeon complained that he did make general objections during the instruction conference but no specific objections to the verdict form were made on the record. *Id.* In its opinion, the court noted the distinction between the burden of making timely and specific

objections to instructions, versus the need to object to verdict forms. The Court found that while a specific objection to instructions need not be made at trial, specific objections **must** be made to the submission of verdict forms at the time they are given to the jury or the right to complain is waived. *Id.* at 869. More importantly, the *Johnston* court also noted that the surgeon also had a chance to object after the verdict was returned and before the jury was discharged, as was the situation in the case at bar. *Id.* at 870. In noting, the court stated:

> We cannot condone trial tactics whereby the trial court is not specifically alerted to possible errors in the instructions or verdict forms and is not given opportunity to correct error if one exists.

*Id.* Comparing *Johnston* to the instant case, the incorrect verdict form was discovered just prior to the verdict being read and accepted and prior to the jury being discharged. Therefore, we accept that Lindsey's first opportunity to object to Verdict A was not until the jury returned from its deliberations. However, Lindsey failed to do so or to request any curative relief ... though it had plenty of discussion time to do so. As the court ruled in *Cobb,* supra, "Needless to say, it is counsel's duty to call the attention of the court to any inconsistency or irregularity in such verdict." *Id.* at 226.

■ Based on the above case law, it is apparent that Lindsey waived any complaint it had about the form of Verdict A. However, through its brief, Lindsey advances the theory that use of verdict form A was presumptively prejudicial, thus preserving it for appellate review. *Chambers v. McNair,* 692 S.W.2d 320 (Mo.App.1985). If accepted, this argument would put on the trial court, **sua sponte,** the absolute duty to commence curative action in every case of possible verdict error. Indeed, in *Chambers,* the Eastern District found that there was no reason why it should not apply the same presumption of error to verdict forms as it did to instructions when they deviate from MAI. 692 S.W.2d at 324. However, the Western District seems to hold differently. This court, in the later case of *Davis v. Stewart Title Guar. Co.,* 726 S.W.2d 839, 857 (Mo.App.1987), held that the verdict form was not entitled the same presumption as an instruction. It held that the verdict form was just another trial event and was not entitled to the same treatment as an instruction in connection with preservation of error for appeal. *Id.* at 857. (Meaning some affirmative objection or suggestion must be made by the aggrieved counsel).

*Chambers* can also be further distinguished from the case at bar. In *Chambers,* two separate verdict forms were given (one for each defendant) when the defendants were joint tortfeasors. That result was inconsistent with substantive law as the jury was not legally allowed to enter two separate verdicts. *Id.* at 325. More importantly, the *Chambers* court held it could not say, "as a matter of law," that the result was not prejudicial since it was not possible to discern what the jury would have awarded as damages on a single verdict form. *Id.* at 325.

In the instant case, it is clear from Verdict B and Verdict C, and the rest of the verdict and instruction "package", that the jury was not confused or mislead by Verdict A and intended to award zero damages to each party.

Finally, Lindsey argues the trial judge's acceptance of responsibility for the erroneous verdict form equates presumptively prejudicial error. This court finds nothing in the law to support that contention. There is no dispute by either party that the wrong verdict form was used, and how it occurred is irrelevant. What **is** relevant is the **effect** of Verdict A and the parties' response and actions once the mistake was discovered.

Although case precedent holds a trial judge **may** fix an erroneous verdict form and send the jury back to deliberation without request from counsel, there is no law that mandates he do so *sua sponte* in a case of duplicate verdict forms.

■ The judge has discretion with what to do with errors. In *Van Eaton v. Thon,* 764 S.W.2d 674 (Mo.App.1988), the trial court sent the jury back for further deliberation by pointing out to it that verdict forms were incorrect and by referring them to instructions. The verdicts were, in fact, defective

and counsel can not claim error on appeal as to the judge's action, when counsel did not object at trial to the same action. *Id.*

In addition, in *Moran,* 714 S.W.2d at 237, the trial judge was held not to have a duty to automatically note verdict form error and send the jury back, but was given discretion in determining whether or not the verdict was inconsistent or vague, without the plaintiff first requesting such correction. The court held, where the plaintiff fails to request correction before jury was discharged, no instructional error is committed by failure of the court to give new instructions which may be given only if the jury returns an inconsistent, incomplete, or otherwise erroneous verdict. *Id.*

■ The trial judge's responsibility, therefore, is much less when dealing with verdict forms as opposed to jury instructions. The form of the verdict is not an instruction, and it is the latter which is to guide the jury in reaching the proper verdict. *Davis,* 726 S.W.2d at 842.

There was no evidence that the jury did not understand that Verdict A applied to Lindsey's claim against Jenkins. There is no question that Verdict A was attached to the "package" containing the verdict director and damage instruction for Lindsey's claim against Jenkins. It is well-established law that the verdict directing instruction and the verdict form are to be read together. *Colonial Construction Co. v. Sharp Indus. Inc.,* 421 S.W.2d 551, 557 (Mo.App.1967). In addition, the packaging instruction stated that Verdict A was to be used for Lindsey's claim against Jenkins and both parties counsel argued to the jury how to fill in the blanks on Verdict A.

This court holds Lindsey did not timely object or ask for curative measures before the jury was discharged, though it had adequate time and opportunity to do so after the error was discovered; therefore, it waves any objection to use of the verdict form. In addition, it is noted that even if Lindsey had preserved the issue for appeal, it is not presumptively prejudicial, and Lindsey can't demonstrate the jury was mislead or confused by the verdict form.

The point is denied.

■ Lindsey next contends the trial court erred by submitting a "substantial performance" jury instruction in the case because substantial performance was not legally sufficient as a matter of law, nor was it supported by the evidence.

There were two jury instructions (verdict directors), numbers 7 and 14, submitted to the jury involving the term "substantial performance." The entire text of Instruction No. 7 (MAI 26.07), Lindsey's verdict director, reads as follows:

> Your verdict must be for Plaintiff Lindsey Masonry Company, Inc., against Defendant Jenkins & Associates, Inc. if you believe:
>
> First, plaintiff and Defendant Jenkins & Associates, Inc. entered into an agreement whereby plaintiff agreed to complete the masonry work on the Foxhill Elementary School Project, and Defendant Jenkins & Associates, Inc. agreed to pay plaintiff for the work, and
>
> *Second, plaintiff substantially performed its agreement; and*
>
> Third, Defendant Jenkins & Associates, Inc. failed to perform is agreement, and
>
> Fourth, plaintiff was thereby damaged. (Emphasis supplied)

Jenkins' verdict director (Instruction No. 14) was the same with the exception of the party's roles being reversed.

Lindsey claims "substantial performance," as a matter of law, isn't appropriate for the dispute in this case, nor was there evidence to support this instruction. At trial, Lindsey claims it presented its case to the jury alleging three separate independent breaches of contract, each material in and of itself, and sufficient to give rise to a claim for total breach of the agreement. MAI 26.07, used here, is applicable to contracts where substantial performance is sufficient. The "Notes on Use" to the instruction state in pertinent part:

> This instruction may be used only in cases where substantial performance is legally sufficient.

MAI 26.07 [1981 Revision] Notes on Use (1980 New). According to Missouri Law:

> Substantial Performance is a relative concept referring to the ratio between the performance rendered pursuant to the contract and the performance due under the contract. Analysis of a breach of contract claim based upon a substantial performance theory must therefore begin with determination of the contracts' terms.

Why a substantial performance instruction would be inappropriate in an uncompleted construction project, where both the contractor and subcontractor are unhappy with the other's performance, is mysterious. Conversely, Lindsey does not explain why MAI 26.06, which requires the jury to find that "the plaintiff *performed* his agreement," would have been the **appropriate** instruction in this case.

First, precedent holds substantial performance is especially appropriate in construction contract cases. *E.A.U. Inc. v. R. Webbe Corp.*, 794 S.W.2d 679, 685 (Mo.App.1990); *McAlpine Company v. Graham*, 320 S.W.2d 951 (Mo.App.1959). When a party has not completed its performance under a contract, "substantial, though incomplete, performance of contractual duties with only slight deviations from the contract is sufficient evidence of performance **by the party seeking to enforce the agreement**." *E.A.U.* at 685.

It is especially appropriate in a construction context because it is highly unusual for a project to be completed in exact accordance with the original plans and specifications. For example, a contractor will have "substantially performed" his contractual obligations and be entitled to payment even where the walls installed are not exactly plumb. Notes On Use, MAI 26.07.

▆ However, if the plaintiff has **not** fully performed to exact and original contract specifications, an instruction patterned from MAI 26.06 (full performance) may not be used. *Smith Moore & Co. v. J.L. Mason Realty & Invest., Inc.*, 817 S.W.2d 530, 534 (Mo.App.1991).

But perhaps most importantly, a full performance instruction, such as MAI 26.06, may only be used when both the terms of a contract and the breach are at issue. *See* MAI 26.06; *Killian Constr. Co. v. Tri–City Constr. Co.*, 693 S.W.2d 819, 829–830 (Mo.App.1985). In *Killian*, the appellant argued that an instruction pattered from MAI 26.06 should have been submitted but the court found that MAI 26.07 (substantial performance) was the proper instruction because only the breach was at issue. *Id.* at 830. Such is analogous to the instant case, because neither party has argued that any term of the contract is in dispute. Both parties agreed to the language and terms of the subcontract.

Second, the contracts in evidence here are thoroughly peppered with references to "substantial performance" and "substantial completion," especially as to payment or further requirements.

Third, and in any event, Lindsey fails to prove any prejudice suffered by the giving of this instruction. In fact, the substantial performance verdict director actually works in Lindsey's favor. MAI 26.07 requires that the jury find that "plaintiff **substantially performed** his agreement" in order to recover damages; while MAI 26.06 requires the jury to find that "plaintiff **performed** his agreement" in order to recover.

Obviously, a finding that Lindsey "substantially performed" is a lesser burden of proof for Lindsey. Lindsey could have argued that it substantially completed part of the work under the MAI 26.07 submission and have been entitled to the full contract amount claimed, minus sums to correct any problems.

Conversely, Lindsey cannot be heard to complain about 26.07 language in the Jenkins' submission. Both submissions were based on the same contracts and the same facts—it makes no sense to now argue an appeal that the verdict directors should have been different.

Finally, Lindsey claims the verdict director on Jenkins' counterclaim against Lindsey (Instruction 14) is **also** prejudicially erroneous. Lindsey claims it was prejudiced because Jenkins was able to take advantage of a reduced burden of proof previously dis-

cussed in connection with Lindsey's verdict director (Instruction 7). Lindsey relies on *Kim v. Conway & Forty, Inc.*, 772 S.W.2d 723 (Mo.App.1989) to its detriment. *Kim* is easily distinguishable from the instant case, in that the contract involved in the dispute did not contain a provision for substantial performance. In addition, it was not a construction contract case but, rather, a contract for the sale of real property. Also, there was no counterclaim at issue in the case, just a primary claim where the verdict director was submitted by appellant, not respondent, as here. The court mirrored that thought when it ruled that while MAI 26.07 was the correct instruction, it was impermissible to modify it to reflect substantial performance of the defendant on **plaintiff's** verdict director. *Id.* at 726. Interestingly enough, though Lindsey uses *Kim* in its attempt to bar the use of the "substantial performance" Instruction 14 on Jenkins' counterclaim, Lindsey itself tried to use the same to advocate substantial performance by Jenkins, albeit unsuccessfully, in its own submitted verdict director. (It was one of Lindsey's instructions which the trial court refused).

In the instant case, Instruction 14 submits Jenkins' counterclaim against Lindsey, therefore, Jenkins is the **plaintiff** on this claim. Consequently, even under *Kim*, MAI 26.07 was properly submitted.

The point is denied.

■ Appellant contends the trial court erred in refusing to include Lindsey's three separate **theories** of breach of contract within the MAI 26.07 verdict directing instruction.

Lindsey points to its three theories which it claims are material: 1) failure of Jenkins to provide pressurized water on the project site; 2) failure of Jenkins to provide or maintain adequate, temporary roads around the project site; and 3) failure of Jenkins to pay Lindsey money due for two months worth of masonry.

The pertinent facts are as follows: The trial court mandated the use of MAI 26.07 (substantial performance) jury instruction for Lindsey's claim against Jenkins. All of the verdict directors submitted by Lindsey were rejected by the trial court. Those rejected verdict directors all had one thing in common ... they sought to include the specific theories of breach of contract advanced by Lindsey, namely the failure to provide adequate temporary roads and pressurized water. The trial court rejected those, accepting instead the following instruction: (in pertinent part)

## INSTRUCTION NO. 7

Your verdict must be for Plaintiff Lindsey Masonry Company, Inc., against Defendant Jenkins & Associates, Inc. if you believe:

First, plaintiff and Defendant Jenkins & Associates, Inc. entered into an agreement whereby plaintiff agreed to complete the masonry work on the Foxhill Elementary School Project, and Defendant Jenkins & Associates, Inc. agreed to pay plaintiff for the work, and ...

This is a standard breach of contract verdict directing instruction, as it is centered on the issue of performance and payment for that performance.

Lindsey believes this verdict director to be inadequate. This court disagrees. Lindsey cites *Flo–Products Co. v. Valley Farms Dairy Co.*, 718 S.W.2d 207 (Mo.App.1986). *Flo–Products*, Lindsey claims, holds it is reversible error for an instruction to assume or ignore a controverted fact. *Id.* at 208. However, a careful reading of the case reveals that logic to be a broad generalization. *Flo–Products* was a breach of contract dispute where the basic terms (price) of the contract were in dispute because the "minds" of plaintiff and defendant "never met as to that issue." The court held, "In the usual suit on account, a 'meeting of the minds' is not a **controverted** issue and need not be instructed on. But here, a 'meeting of the minds' as to price was a controverted issue. For a verdict directing instruction to be acceptable, it must require the jury to find all the necessary elements of the case **except for uncontroverted issues.**" *Id.* at 208.

■ Herein lies the distinction between *Flo–Products* and the instant case. The issues of responsibility to provide water, roads

and payment were **noncontested** terms of the contract. Missouri only requires that **disputed** issues be submitted in the verdict directing instructions. *Killian Const. Co. v. Tri–City Const. Co.,* 693 S.W.2d 819, 830 (Mo.App.1985). The "theories of breach" sought to be included in the verdict directing instruction in this case are nothing more than a restatement of certain terms contained in the contract documents reciting contractual obligations on the part of Jenkins. The terms of the contract were never in dispute by either party. The sole issue in this case was whether a **breach** of those responsibilities occurred and, if so, by whom. Lindsey can provide no authority for the proposition that the verdict directing instruction must hypothesize the **method** of breach that Lindsey sought to prove to the jury.

In *Killian,* supra, this court held that the verdict director does not fail by "failure to identify what theory of breach by the contractor the jury must find." *Id.* at 830. *Killian* further held that MAI does not require the verdict director to submit an issue not in dispute.

The above precedent mirrors the purpose behind the MAI's. In *Zipp v. Gasen's Drug Stores, Inc.,* 449 S.W.2d 612, 617 (Mo.1970), the Supreme Court stated:

> The clear purpose of the new method of instructing juries, adopted by Supreme Court Rule 70.01 and 70.02 V.A.M.R., effective January 1, 1965, was to submit ultimate issues, not evidentiary details.

*Id.* at 617.

Lindsey's claim involves evidentiary details, not disputed issues.

Point denied.

■ Lindsey's fourth point submits the trial court erred in failing to direct a verdict in its favor because Jenkins breached conditions precedent to Lindsey's performance under the contract.

Lindsey claims Jenkins failed to meet the following conditions precedent: 1) adequate temporary roads; 2) adequate water supply; and 3) adequate payment. Then Lindsey provides the court with several options. Lindsey suggests a directed verdict is due because Jenkins: 1) failed to satisfy those conditions precedent; 2) was the first to breach the contract; and 3) as a result, Lindsey was excused from finishing the job.

The substance of Lindsey's argument is that Jenkins failed to satisfy a condition precedent, or that Jenkins was the "first to breach," such that Lindsey's obligation to complete performance under the contract was not triggered. As a result, Lindsey claims its performance, substantial or not, was not necessary and entitled Lindsey to damages as a matter of law. This court disagrees.

■ Appellate review of a denial of a directed verdict includes review of the evidence presented at trial to determine whether or not substantial evidence was introduced which tended to prove facts essential to plaintiff's recovery. *Aubuchon v. Hyland,* 820 S.W.2d 613, 615 (Mo.App.1991).

The substantial evidence towards submission is as follows: On the claim of inadequate pressurized water, the evidence reflected that Jenkins connected a hose to a residence adjacent to the building site. Lindsey's employees were able to fill up their water barrels with the hose. The water main extension was completed in January, and Lindsey was then able to attach a hose to the hydrant. Most importantly, Lindsey never voiced complaints to Jenkins' job superintendent. On the claim of inadequate access roads, the evidence reflected that an excavator graded an access road from the street on both ends of the project. Albeit, the excavator was unable to grade when the site was too wet or frozen. However, two days before Lindsey walked off the job, the excavator smoothed out the entire area. Again, Lindsey never voiced a complaint to the superintendent.

On the claim of timely progress payments to Lindsey from Jenkins, much evidence was presented concerning payment procedure. Language to this effect is found both in the prime contract and in the subcontract. Evidently, Jenkins was paid by the owner monthly, based on the percentage of work that was completed. The payment procedure began with the various subcontractors submitting individual payment request to Jen-

kins. It was then the project architect's responsibility to approve or disapprove the amounts claimed by the subcontractors. To do this the architect inspected the work actually completed, and then compared the amounts claimed to the actual work done. If the architect did not believe that the work was actually completed to the extent of the payment claim, he would adjust the percentages accordingly and authorize payment to the subcontractor (Lindsey). The subcontractor was then paid the amount approved by the architect. This method of payment was agreed to in the signed subcontract liturgy between Lindsey and Jenkins.

Because Lindsey signed the subcontract and the subcontract incorporated the prime contract, and both were admitted into evidence, there was substantial evidence before the jury as to payment procedure.

Point denied.

■ Lindsey next contends the trial court erred in accepting Respondent St. Paul's language for a jury instruction because of the law governing surety liability.

Basically, Lindsey is claiming the verdict director language is an incorrect statement of the law regarding the rights and liabilities of a contract payment surety and its bonded principal to a claimant on a Missouri public works bond. Pertinent facts surrounding this claim are as follows: At the instruction conference, the parties and the Court discussed the verdict director for Lindsey's case against St. Paul as Jenkins' surety. Instruction No. 11, as approved and submitted to the jury provided: (in pertinent part)

> First, that under Instruction 7, defendant Jenkins & Associates, Inc. breached its contract with plaintiff Lindsey Masonry Company, Inc. and that defendant St. Paul Fire and Marine Insurance Company **under the terms of its contract payment bond agreed to protect plaintiff Lindsey Masonry Company, Inc. from the consequences of that breach** ... (emphasis added)

The part highlighted above was the part objected to by Lindsey. Lindsey, instead submitted an instruction which would substitute the "agreed to protect" words with language to the effect that St. Paul agreed to "pay sums due." This was rejected by the trial court.

With the refusal of this instruction, Lindsey claims the submitted Instruction No. 11 is fatally defective in several respects.

First, that the erroneous inclusion of the "substantial performance" language in Instruction No. 7 also taints No. 11 because the jury must find for plaintiff pursuant to Instruction No. 7, as a precondition for finding St. Paul liable in Instruction No. 11. This argument is quickly rejected because this court has already found the use of the "substantial performance" language appropriate in No. 7. Therefore, No. 11 was not tainted.

■ Secondly, Lindsey claims No. 11 erroneously summarizes St. Paul's contract payment bond obligations "to protect" Lindsey from the consequences of a "breach." Lindsey claims its suggested language of "pay sums due," more accurately speaks to the responsibilities of St. Paul and its obligations pursuant to the payment bond, and that the jury could have easily been confused by the absence of any reference to the term "breach" in Lindsey's packaging of instructions for its claims against Jenkins and St. Paul. This claim is also rejected. The jury here did not even get to consider Instruction Number 11. A surety's liability is secondary and requires the surety to pay only in the event the principal does not. *State ex rel. Missouri Highway & Transp. Com. v. Morganstein,* 703 S.W.2d 894, 899 (Mo.1986). Jury instruction (Number 10) specifically directed the jury to disregard Instruction 11 if it decided in favor of Jenkins on Verdict A. Lindsey did not object to this packaging instruction. The jury did find for Jenkins on Verdict A, so it did not get to Instruction No. 11.

As a result, even if there were error in the specific wording of the jury instruction (which Lindsey fails to support with authority), the error would be harmless because the jury did not even consider the instruction. *Mino v. Porter Roofing Co., Inc.,* 785 S.W.2d 558, 561–562 (Mo.App.1990); *Jordan v. Abernathy,* 845 S.W.2d 86, 88 (Mo.App.1993). In any event, this court finds the instruction

proper as submitted because there can be no recovery from a surety unless the conditions of the bond are met. *Frank Powell Lumber Co. v. Federal Ins. Co.*, 817 S.W.2d 648, 651 (Mo.App.1991). Therefore, it was correct to instruct the jury on the requirement that St. Paul agreed to protect Lindsey under the terms of the bond.

Point denied.

Lindsey next contends the court erred when it failed to grant a directed verdict for Lindsey on the claim of vexatious refusal to pay against St. Paul. At trial the court instead granted St. Paul a directed verdict.

Lindsey claims the law requires a surety to make its own independent investigation of claims in order to meet the test of good faith and to avoid vexatious penalties for willful refusal to make payment. See, e.g. *Howard Constr. Co. v. Teddy Woods Constr. Co.*, 817 S.W.2d 556, 561 (Mo.App.1991). Lindsey claims St. Paul simply deferred to Jenkins' decisions, failing to conduct any independent inquiry or investigation of its own on the matter.

As mentioned, *supra*, a surety's liability is secondary and requires that surety to pay only in the event the principal does not. *State ex rel. Missouri Highway & Transp. Com. v. Morganstein*, 703 S.W.2d at 898 (Mo.1986). In other words, the surety is only liable if the principal is found liable and does not pay. *Id.*

■ Nevertheless, the directed verdict was granted on reasonable grounds. In reviewing a directed verdict in favor of the defendant (Jenkins/St. Paul), the appellate court views the evidence and inferences in the light most favorable to the plaintiff (Lindsey) and disregards all contrary evidence and inferences. *Sisters of St. Mary v. Blair*, 766 S.W.2d 773, 774 (Mo.App.1989). However, if reasonable grounds support the directed verdict, it must be affirmed. *Fly v. Royal Auto Repair*, 747 S.W.2d 237, 238 (Mo.App.1988). This court holds the directed verdict in favor of St. Paul was properly granted because it was supported by reasonable grounds in fact and law.

■ A claim for vexatious refusal to pay is based on § 375.420 RSMo (1986) which statutorily gives damages for a surety's vexatious refusal to pay on a bond. *Housing*

*Authority of Clinton v. Baumann*, 512 S.W.2d 436, 440 (Mo.App.1974). "Vexatious" means without reasonable cause or excuse, and "there must be evidence from which it may be found that the refusal to pay the loss was willful and without reasonable cause as that fact would appear to be a reasonable and prudent man prior to trial." *Id.* A review of the transcript and record shows there to be only one smidgen of evidence to support this claim. At trial, Lindsey's president testified that no one representing St. Paul ever discussed Lindsey's bond claim with him or any of Lindsey's other employees as far as he knew. There was no evidence that St. Paul had failed to investigate the claim or had no reasonable cause to deny the claim.

The *Baumann* case cited by Lindsey can be factually distinguished because in that case, the principal was found liable and there was testimony about a lack of investigation by the surety. 512 S.W.2d at 441. Here, the jury found Jenkins (principal) not liable and there was no evidence of a lack of investigation.

As such, the trial court had reasonable grounds for awarding St. Paul a directed verdict.

Point denied.

■ Lindsey next contends the trial court erred by admitting evidence relating to involvement of the parties on other construction projects.

The evidence complained of in this point was the testimony of Jenkins' project manager regarding other construction projects that Lindsey and Jenkins had worked on together prior to this one. Specifically, the manager testified that Lindsey's president told him that he made plenty of money on another construction project with Jenkins and was leaving the current construction project (Fox Hill).

■ Lindsey is correct in asserting it made a motion in limine concerning this testimony, which was subsequently denied by the trial court. However, review of the transcript shows that when the project manager was asked to testify at trial as to this same information, Lindsey failed to object or otherwise renew its motion in limine, nor did the trial court *sua sponte*, renew it for Lindsey.

18

Lindsey appears to have not complained about the testimony after the motion in limine was overruled. That failure to complain when the testimony was elicited at trial works to waive Lindsey's further complaint on appeal. *Derossett v. Alton and Southern Ry. Co.,* 850 S.W.2d 109, 111 (Mo.App.1993). A motion in limine simply does not preserve the right to challenge alleged error on appeal. *Id.*

Additionally, if the matter **were** preserved, the testimony is relevant to show Lindsey's state of mind and motive to walk off the job in the instant lawsuit. As such, it is a properly admitted admission of a party opponent. *Russell v. Frank,* 348 Mo. 533, 154 S.W.2d 63, 66 (banc 1941).

Point denied.

Lindsey's final point on appeal claims the court erred by admitting evidence of Jenkins' alleged offers of compromise and settlement sent to Lindsey prior to the suit.

The reviewing court will not upset evidentiary rulings absent clear abuse of discretion, which is granted to the trial judge in broad fashion. *Kansas City Mun. Corp. v. Keene Corp.,* 855 S.W.2d 360, 367 (Mo. banc 1993).

Lindsey claims the offers are inadmissible under Missouri law and allowed Jenkins to appear to the jury like the peacemaker. At trial, Lindsey claims it unsuccessfully sought to exclude evidence and testimony in Jenkins' case, to the effect that it offered Lindsey an additional $12,000 to settle the dispute. Jenkins claims the letters were not offers of settlement or compromise of the claim, but merely an agreement by Jenkins to pay an additional $12,000 of the total amount ultimately due Lindsey, if Lindsey would substantially complete the job. Jenkins says the offer was made in an effort to keep Lindsey from walking off the job, **not** to settle the dispute.

Lindsey is correct to cite Missouri Evidence Restated § 408, which essentially mirrors Federal Rule of Evidence 408. Rule 408 prohibits admission of offers of compromise and settlement except where such evidence is utilized for another purpose. Obviously, this law was enacted to favor settlement of disputes. Missouri courts of appeals have been consistent in excluding such offers

and settlement negotiations because of the policy of the law. *Owen v. Owen,* 642 S.W.2d 410 (Mo.App.1982).

However, there are exceptions to this rule. In *Aiple v. South Side Nat'l Bank,* 442 S.W.2d 145, 152 (Mo.App.1969), the court held that, when it is the party who extended the settlement offer that is seeking admission of the evidence, such evidence is admissible as an exception to the general rule. *Id.* The reason for this exception is that the public policy encouraging settlements is not undermined because the evidence is not offered to show an admission of liability. *Id.* at 152.

In the instant case, the public policy is not implicated because it was Jenkins who elicited the evidence. The letter was offered only to show that Lindsey refused the offer, holding out for the full payment due under the contract. Lindsey has not shown this court that admission of the letters containing the offer to pay an additional amount which was made to persuade Lindsey to stay on the job, was a clear abuse of discretion as required under the standard of review. *Keene,* at 367.

Point denied.

The judgment is affirmed.