**Harry CHAMBERS & Liselotte M. Chambers, Plaintiffs-Appellants,**

v.

**James D. McNAIR and Jean McNair, Defendants-Respondents,**

Nos. 48511, 48544.

Missouri Court of Appeals,
Eastern District,
Division One.

April 30, 1985.

Rehearing Denied in No. 48544
June 5, 1985.

Application to Transfer
Denied Aug. 7, 1985.

Felicia Lenore Orth, Clayton, for plaintiffs-appellants.

Hiram W. Watkins, St. Louis, for defendants-respondents.

KAROHL, Judge.

Plaintiffs, Harry Chambers and Liselotte Chambers sued defendants James D. McNair and Jean McNair for fraudulent misrepresentation in a sales transaction. Plaintiffs obtained a verdict and judgment against James McNair for $32,500 actual and $25,000 punitive damages and Jean McNair for $32,500 actual damages. The jury also gave plaintiffs a $25,000 punitive damage award against Jean McNair but the trial court set it aside on the ground that it was not supported by the evidence.

Plaintiffs appeal claiming error in setting aside the punitive damages award against defendant Jean McNair. Defendants, on cross-appeal, assert that plaintiffs failed to make a submissible case against either defendant because (1) only assets were sold and any misrepresentation on volume of sales is wholly irrelevant and (2) that Mrs. McNair made no misrepresentation and was not aware of any misrepresentations made by her husband. They also claim they are entitled to a new trial because of errors in the verdict form which resulted in a "double recovery" of actual damages for the same alleged misrepresentation.

We summarize the facts "that bear[s] upon the elements of fraud in the light most favorable to plaintiffs, and give them the benefit of all reasonable inferences to be drawn from the evidence." *Huttegger v. Davis*, 599 S.W.2d 506, 508 (Mo. banc 1980). In so doing we disregard defendants' denials of many of the facts upon which plaintiffs rely.

In February 1977 the defendants bought a ladies' clothing store. They operated the store until November 20, 1978. According to their tax returns the business, which they named "Dar's Fashions", lost $23,425 in 1977 and $34,188 in 1978. Only Mr. McNair was aware of the bookkeeping and the details of records on income and expenses. Both McNairs signed the tax returns.

In late March or early April 1978 the McNairs ran a newspaper advertisement to sell the store and plaintiffs answered the ad by letter. The Chambers expressed an interest in buying "the ladies' fashion store you are selling." For the most part the men negotiated the sale. On one or two occasions the women were present when "figures" were discussed. There is no evidence to indicate whether the "figures" were business operation and financial details or price and terms of sale.

The plaintiffs as buyers were visitors to the store on a number of occasions. The sellers offered the buyers boxes of loose sales tickets for their review but Mr. McNair refused to release sales or income tax returns. He did, however, in May 1978 give Mr. Chambers two typewritten documents, one listing "... A RECAP OF SALES IN MONTH ORDER FROM THE START OF DAR FASHIONS" and a second describing "SALES AND EXPENSES: FEBRUARY 1977 to FEBRUARY 1978." These two statements showed $88,738 in sales, $75,215 in expenses and $32,900 of inventory on hand as of March 1, 1978. In contrast, the income tax returns filed by the McNairs for years 1977 and 1978 showed a total sales volume of $58,897, considerably less than that shown on the recap statement. Mr. McNair maintained the inconsistency was immaterial because he was selling assets only and not a going business.

Defendant-sellers' attorney prepared the sales contract. The contract was signed on October 5, 1978 by all of the parties and

the sale closed on November 20, 1978. The relevant parts of the contract follow:

SALE AGREEMENT PERTAINING TO THE SALE OF THE BUSINESS KNOWN AS DAR'S FASHIONS

. . . . .

WHEREAS, Seller represents and warrants that they have been and still are *engaged in the business* of buying and selling clothing and other articles usually sold in a woman's fashion store, and that *said business is known as Dar's Fashions,* and is located at 12965 Olive Street Road, St. Louis, Missouri, 63141; and Seller desires to sell to Purchaser and Purchaser desires to purchase from Seller, all of the stock of merchandise of the Seller in the premises as of November 19, 1978, and all fixtures pertaining to said business, as attached hereto and made a part hereof as if specifically set forth.

NOW, THEREFORE, it is hereby agreed as follows:

1. That Seller agrees to sell, transfer and deliver to Purchaser, and Purchaser agrees to purchase from the Seller, at the price, and upon all the other terms, provisions and conditions set forth herein, all of Seller's merchandise, consisting of clothing and other matters of wearing apparel in the premises of Seller at 12965 Olive Street Road, St. Louis, Missouri 63141 for the sum of the invoice prices for all of said merchandise remaining in said premises as of November 19, 1978, less five percent (5%) of said invoice price.

2. That Seller agrees to sell, transfer and deliver to Purchaser, and Purchaser agrees to purchase from the Seller at the price, upon all of the other terms, provisions and conditions set forth herein, all of Seller's fixtures now in the premises pertaining to the business, except for a chandelier which is presently in the premises, and one jewelry case, all of which shall be removed by the Seller on or before November 29, 1978; the sum to be paid for said fixtures is Three Thousand Dollars ($3,000) though Seller and Purchaser acknowledge that the reasonable value of said fixtures is Eighteen Thousand Dollars ($18,000), but in order for Purchaser to purchase said merchandise and fixtures, and to complete the sale of said items, Purchaser agrees that they will not pay anything in excess of Three Thousand Dollars ($3,000) for said fixtures.

. . . . .

4. That simultaneously with the execution of this agreement the purchaser shall pay ... the sum of Two Thousand Dollars ($2,000), as earnest money, to be applied on such purchase when consummated as provided herein. (emphasis added).

The contract also provided for the transfer to the purchasers of an existing lease and deposits made with the landlord when the buyers paid like amounts to the sellers. There was a further provision that taxes and insurance would be prorated to the date of closing. The parties inventoried the merchandise on November 19, and closed the transaction on November 20 on which date the plaintiff-buyers paid the defendant-sellers $23,178.56.

The Chambers operated the business from November 20, 1978, lost money and filed this suit for fraudulent misrepresentation on September 19, 1979. They sought $46,678.56 in actual damages, comprised of $23,178.56 (the purchase price) and $23,500 in losses, plus $250,000 in punitive damages. The Chambers went out of business January 31, 1980.

Defendant seller Jean McNair appeals on two grounds pertaining only to her defense. She argues that the court erred in failing to direct a verdict in her favor because plaintiffs failed to prove (1) that she overheard or was otherwise aware that Mr. McNair misrepresented the sales volume of Dar's Fashions; (2) that she knew the representations were false; and, (3) that plaintiffs relied upon her silence if the sales volume figures as misrepresented were discussed in her presence. She also contends

that since the verdict directing instruction submitting plaintiffs' claim against her permitted a verdict without a finding of misrepresentation on her part she was entitled to a new trial.

Generally, fraud "properly includes all acts, omissions and concealments which involve a breach of legal or equitable duty, trust or confidence justly imposed, and are injurious to another, or by which an undue and unconscious advantage is taken of another." *Stark v. Cole*, 373 S.W.2d 473, 477–478 (Mo.App.1963) quoting Storey, *Equity Jurisprudence* § 186. Specifically, fraudulent misrepresentation requires the proof of nine elements: "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or his ignorance of the truth; (5) the speaker's intent that his statement be acted upon; (6) the hearer's ignorance of the falsity of the statement; (7) his reliance on the truth of the statement; (8) the hearer's right to rely on the statement; and (9) the hearer's consequent and proximate injury." *Springdale Gardens, Inc. v. Countryland Development, Inc.*, 638 S.W.2d 813, 815 (Mo. App.1982).

Appellant Jean McNair contends that she did not know that her husband misrepresented the sales volume of Dar's Fashions nor did she by silence acquiesce in the representation, both of which relate to element one—a representation; that even if she was aware that the representation occurred she had no knowledge that the representation was false—elements two and four; and, there was no evidence that plaintiffs relied upon her representation by silence—element seven.

Plaintiffs respond that she was present when figures that her husband had written out on the recaps were discussed and that silence can be fraudulent conduct. *Vendt v. Duenke*, 210 S.W.2d 692, 699 (Mo.App. 1948). They further argue that Mrs. McNair was aware of the true figures because she was a joint owner of the business, had access to the sales and expense records and signed tax returns showing losses not profits. Finally, plaintiff-buyers

contend that they relied upon the misrepresentation because they would not have purchased the store if it were not profitable.

The burden of proof of fraud " 'rests upon him who asserts it to make it manifest' ... Fraud imputes venality and corruption to the person charged with it, and both reason and law require clear and convincing proof of it. The difficulty of proving fraud does not dispense with the necessity of making the required proof." *Gibson v. Smith*, 422 S.W.2d 321, 327–328 (Mo.1968).

■ We find that the plaintiffs have failed to prove that the "figures" discussed in the presence of Mrs. McNair were the exaggerated recapitulation statement of sales. There is no direct evidence that Mrs. McNair ever was aware of the existence of the recapitulation documents. Mr. Chambers recalled that Mrs. McNair was present "when Mr. McNair and I discussed money, anyway, figures." Mrs. Chambers never talked about the figures with Mrs. McNair. However, the women were present when the two gentlemen discussed the business. Mrs. McNair testified that she was aware that her husband was making representations to the sellers. However she denied that the representations with which she was familiar included the misrepresented sales volume recapitulation figures. There being no proof of Mrs. McNair's knowledge of the recapitulation misrepresentation nor that it was discussed in her presence it follows that her silence could not have misled the plaintiffs. Accordingly the court erred in not directing a verdict for defendant-seller Mrs. McNair.

James and Jean McNair both contend the trial court erred in failing to direct a verdict in their favor on the fraud claim because the sale transaction was solely for assets and not a sale of a going business. They maintain that even if Mr. McNair fraudulently misrepresented the volume of sales the misrepresentation was immaterial to the actual transaction. According to the contract and the undisputed evidence plaintiff-buyers purchased $18,000 worth of fixtures for $3,000; and the merchandise at

wholesale value of $20,712 less 5%, for a resulting price of $19,677.06. Plaintiffs received $38,712 of assets for $23,178.56. There was also an exchange of dollars as adjustments for prepaid lease deposits, taxes and insurance on which the parties traded dollars.

We conclude that the sales contract is ambiguous and is not conclusive that only assets were sold. It recites "THE SALE OF THE BUSINESS KNOWN AS DAR'S FASHIONS" and it describes merchandise and fixtures pertaining to a business. The Chambers testified that they were buying a business. The advertisement and the response to the advertisement were in terms of the sale and purchase of a business. Mr. and Mrs. McNair wanted to sell a "store" and were aware that the plaintiffs wanted to buy a store. The language of the contract was not so plain and unambiguous as to bind the parties to defendants' theory of a sale of assets. The ambiguity in the contract could could support either a sale of a business or a sale of assets construction. Consequently the interpretation was a "proper subject for consideration by the jury." *O'Brien v. Missouri Cities Water Co.*, 574 S.W.2d 13, 20 (Mo.App.1978). There was no error in the jury's conclusion that there was a sale of an ongoing business. Defendants were not entitled to a directed verdict as a matter of law on this point.

Defendants claim a right to a new trial because of error in submitting separate verdict forms. Plaintiffs admit that separate verdict forms patterned after MAI 36.01 (1980 Revision) were submitted for each defendant rather than a single form patterned after MAI 36.12. As a result the jury awarded actual damages separately against each defendant in a case where the defendants were, at most, joint tort feasors. The judgment, in accordance with the verdict, was for a separate sum against each defendant. This was error as a matter of law since there can be "but one final judgment in the cause, and a judgment against joint tort-feasors must be for a single amount and cannot be split up."

*Polkowski v. St. Louis Public Service Co.*, 229 Mo.App. 24, 68 S.W.2d 884, 889 (1934). We noted in *Linkogel v. Baker Protective Services, Inc.*, 626 S.W.2d 380 (Mo.App. 1981)

> that Missouri's rule as to compensatory damages in tort actions is that '[a]ll who are guilty of participating in the wrongdoing are jointly and severally liable for the whole damage, and the judgment must be in one amount and against all who are not discharged.' *State ex rel. Hall v. Cook*, 400 S.W.2d 39, 40[2] (Mo. banc 1966).

626 S.W.2d at 387. The use of separate verdict directors is permissible but not separate forms where, as here, there are not varying degrees of culpability. *See Haynes v. Hawkeye Security Insurance Co.*, 579 S.W.2d 693, 704–705 (Mo.App. 1979).

It follows that the separate verdicts for actual damages are a duplication of one another. We are confronted with the question of whether the dual verdict forms were prejudicial. In the context of claimed error on verdict directing and damage instructions it has been said that verdict forms are not instructions. The Notes on Use for MAI 36.01, Third Edition effective June 1, 1980 provides that verdict forms are not instructions and the court shall not read them to the jury. Each of the districts of our court of appeals have noted a distinction. *Turley Martin Company v. American Can Company*, 661 S.W.2d 79, 82 (Mo.App.1983); *Affiliated Foods, Inc. v. Strautman*, 656 S.W.2d 753, 758–759 (Mo. App.1983); and *Whiting v. United Farm Agency, Inc.*, 628 S.W.2d 407, 408 (Mo.App. 1982). Each of these cases considered error in the verdict directing or damage instructions. Here we face the issue of the effect of error in the use of the wrong verdict form and whether prejudice should be presumed. We perceive no reason why it should not. In order to promote the virtues of MAI and the requirement of its use where applicable the same presumption should apply. There is no logical or legal reason that it should not. We therefore

hold that the use of the wrong verdict form was presumptively prejudicial. Here, the entry of two separate awards for actual damages resulted where only one is authorized. We cannot say as a matter of law that the result was not prejudicial since it is not possible to discern what the jury would have done if the MAI 36.12 form of verdict had been submitted. Here the only confusion is in the issue of damages. In view of what we have said with regard to the failure to make a submissible case against defendant Jean McNair the error in submitting the wrong verdict form requires a new trial as to damages only against defendant James D. McNair. In addition, the question of withdrawing the punitive damages award against Jean McNair is moot and plaintiffs' appeal must fail.

■ The jury found that defendant James D. McNair was liable for fraudulent misrepresentation and we hold that he is entitled to a new trial on the issue of damages only. We note confusion in the trial on the damages appropriate to a claim based on misrepresentation in a sale transaction. As the plaintiffs elected to retain the business they are entitled to the "benefit of bargain" damages which is the difference in the value of the business at the time of making the contract and the value it would have had if the representations had been true, if any. *Cotner v. Blinne,* 623 S.W.2d 615, 619 (Mo.App.1981). In addition to general damages plaintiffs may have special damages which are the proximate result of the fraud, if any. *Salmon v. Brookshire,* 301 S.W.2d 48, 56 (Mo.App. 1957). If actual or special damages are awarded punitive damages may also be determined by the jury. *Coonis v. Rogers,* 429 S.W.2d 709, 716 (Mo.1968).

The judgment against defendant Jean McNair is reversed; the judgment against James McNair is reversed as to damages only and the cause is remanded for retrial on the damage issue.

PUDLOWSKI, P.J., and CARL R. GAERTNER, J., concur.