**SEQUA CORPORATION and Sequa Engineered Services, Inc., Plaintiffs/Respondents,**

v.

**William E. COOPER, Cynthia H. Bitting, and Allied Industrial Group, Inc., Defendants/Appellants.**

No. ED 82286.

Missouri Court of Appeals, Eastern District, Division Three.

Nov. 25, 2003.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 26, 2004.

Application for Transfer Denied March 30, 2004.

Jillian Carey, Robert Blitz, John Bardgett & R. Thomas Avery, Clayton, MO, Joseph Devereux, Jr., Terrance Good, St. Louis, MO, for appellants.

Douglas P. Dowd, James R. Dowd & Laura Greene Lumaghi, St. Louis, MO, for respondents.

WILLIAM H. CRANDALL, JR., Judge.

Defendants, William Cooper, et al., appeal from the judgment, entered pursuant to a jury verdict, in favor of plaintiffs, Sequa Corporation and Sequa Engineered Services, Inc., in an action for fraud, conspiracy to defraud, and breach of fiduciary duty. The court awarded compensatory and punitive damages. We affirm in part and reverse in part.

The evidence, viewed in the light most favorable to the verdict, established that plaintiff, Sequa Engineered Services, Inc. (SESI), was a wholly owned subsidiary of plaintiff, Sequa Corporation (Sequa), which owned 100 percent of SESI's stock. In 1993, SESI sold the assets of Sturm Machine Company (Sturm Machine), a division of SESI, to defendant, Sturm Engineered Products, Inc. (Sturm Products), in return for $3 million in cash and a $1 million promissory note. Sturm Products was the maker on the note and SESI was the payee. John Dowling, an attorney for and a corporate officer of SESI, represented SESI in the sale. Dowling was also part owner with defendants, William Cooper and Cynthia Bitting, of defendant, Allied Industrial Group, Inc. (Allied): Cooper owned 42.5 percent of Allied's shares, Dowling owned 5 percent, and Bitting owned 8 percent. Cooper and Bitting also were attorneys in a law firm that represented subsidiary corporations of Sequa on specific matters and were paid by Sequa. Bitting represented Sturm Acquisitions, L.P. and Sturm Products in the 1993 purchase of Sturm Machine assets. Cooper was also chairman of Sturm Products and Bitting was general counsel. Defendant, Sturm Acquisitions, L.P., was a limited partnership formed for the purpose of holding all the stock in Sturm Products: Cooper was a general partner, holding 20 percent, and Allied and Bitting were limited partners, holding 45 percent and 7 percent, respectively.

Early in 1995, Sulzer Bingham Pumps, Inc. (Sulzer) contacted the president of Sturm Products and expressed an interest in buying Sturm Products. Because Sulzer did not want its competitors to discover its interest in Sturm Products, it entered into a confidentiality agreement with Cooper and Bitting in February 1995. Sturm Products was experiencing financial difficulty, with the result that its president and Cooper were interested in either refinancing or a joint venture with Sulzer. In May 1995, Sturm Products and Sulzer signed a non-binding letter of intent, with the option of making the deal with Sulzer a stock transaction. If Sulzer acquired

stock, the note would remain an obligation of Sturm Products. Sturm Products, through Cooper, asked Bitting to seek a discount of the note to its present value. Bitting contacted Dowling who told her to talk to John Quicke, the president of both Sequa and SESI, because he had a conflict. In October 1995, Quicke agreed to discount the note to $750,000.00 in exchange for an immediate payoff on the note. Bitting represented Sturm Products in seeking a discount on the note from SESI. Bitting told Quicke that Sturm Products merely was refinancing. Dowling handled the paperwork for discounting the note. In August 1995, Cooper told Dowling that the transaction was going to be a joint venture, not a refinancing. In October 1995, Sulzer bought the assets of Sturm Products.

In April 2000, Sequa and SESI brought the present action against five defendants: Cooper, Bitting, Allied, Sturm Acquisitions, L.P., and Sturm Products. Their action was in three counts: fraud (Count I), conspiracy to defraud (Count II), and conflict of interest/breach of fiduciary duty (Count III). They prayed for actual and punitive damages. At trial, however, they did not submit their claims against Sturm Acquisitions, L.P. and Sturm Products to the jury.

Sequa and SESI submitted their fraud claim against defendants, Cooper, Bitting and Allied, to the jury in the following instruction:

### Instruction No. 6

Your verdict must be for plaintiff [Sequa and SESI] against defendants [Bitting, Cooper, and Allied] on plaintiffs' claim for fraud, if you believe:

First, defendant [Bitting], individually and in the scope and course of her agency for defendants [Cooper and Allied] represented to plaintiffs that the [Sulzer] transaction was a refinancing due to the poor financial condition of Sturm and that the transaction was not a sale; and

Second, the representations were false, and

Third, defendant [Bitting] knew that they were false at the time the representations were made, and

Fourth, the representations were material to plaintiffs' decision to discount the note, and

Fifth, plaintiffs relied on the representations in deciding to discount the note and in so relying plaintiffs used that degree of care that would have been reasonable in plaintiffs' situation, and

Sixth, as a direct result of such representations plaintiffs were damaged.

The jury returned a verdict in favor of plaintiffs against Cooper, Bitting, and Allied on the fraud count.

Sequa submitted its conspiracy to defraud claim against Bitting and Cooper in the following instruction:

### Instruction No. 9

Your verdict must be for plaintiffs [Sequa and SESI] on plaintiffs' claims for conspiracy to defraud against defendants [Cooper and Bitting], if you believe;

First, [Cooper and Bitting] agreed to seek a discount on the $1,000,000 promissory note based on the false representations that the nature of the [Sulzer] transaction was a refinancing due to the poor financial condition of Sturm and to conceal from plaintiffs that the transaction was a sale, and

Second, defendants made said agreement with the intent to induce the plaintiffs to discount the amount owed on the $1,000,000 promissory note, and

Third, defendants carried out said agreement, and

Fourth, as a direct result of the defendants carrying out said agreement, plaintiffs were damaged.

The jury returned a verdict in favor of plaintiffs against Cooper and Bitting on the conspiracy count.

Sequa alone submitted its breach of fiduciary claim against Bitting and Cooper in the following instruction:

## Instruction No. 10

Your verdict must be for plaintiff [Sequa] on plaintiff's claim for breach of fiduciary duty against defendants [Bitting and Cooper] if you believe:

First, plaintiff [Sequa] had an attorney-client relationship with defendants [Bitting and Cooper], and that defendants [Bitting and Cooper] had a duty to fully disclose to plaintiff [Sequa] that the [Sulzer] transaction was a sale and not represent that it was a refinancing, and

Second, defendants [Bitting and Cooper] entered into a business transaction with plaintiff [Sequa] involving the discounting of the $1,000,000 promissory note while plaintiff [Sequa] was the client of defendants [Bitting and Cooper], and

Third, during the course of the transaction, defendants [Bitting and Cooper] breached their duty by misrepresenting and concealing from plaintiff [Sequa] that the [Sulzer] transaction was a refinancing instead of a sale, and

Fourth, as a direct result of such conduct, plaintiff [Sequa] was damaged.

The jury returned a verdict in favor of Sequa and against defendants, Bitting and Cooper.

The court also instructed the jury to award punitive damages in favor of plaintiff, Sequa, as follows:

## INSTRUCTION NO. 12

If you find the issues in favor of plaintiff [Sequa], and if you believe the conduct of defendants [Bitting and Cooper and Allied], as submitted in Instruction Number 6 and Instruction Number 9 and Instruction Number 10 was outrageous because of defendants' evil motive or reckless indifference to the rights of others, then in addition to any damages to which you find plaintiff entitled under Instruction Number 6 and Instruction Number 9 and Instruction Number 10, in Verdict A, you may find that defendants [Bitting and Cooper and Allied] are liable for punitive damages.

If you find that defendants [Bitting and Cooper and Allied] are liable for punitive damages in this stage of the trial, you will be given further instructions for assessing the amount of punitive damages in the second stage of the trial.

On the verdict form "A" the jury awarded compensatory damages in the amounts of $250,000.00 and $237,000.00, for a total of $487,000.00 in favor of Sequa and SESI. The jury was instructed on that same verdict form to determine if the three defendants were liable for punitive damages if the jury "found in favor of plaintiffs [Sequa and SESI]." The jury found that the three defendants were liable for punitive damages.

The punitive damage instruction did not make reference to either Sequa or SESI, but only identified the three defendants:

## INSTRUCTION 13

In addition to any compensatory damages you assessed in Verdict A, you may assess an additional amount as punitive damages in such sum as you believe will serve to punish defendants [Cooper, Bitting, and Allied] for conduct for which you found that defendants [Cooper, Bit-

ting, and Allied] are liable for punitive damages and will serve to deter defendants [Cooper, Bitting, and Allied] and others from like conduct.

On verdict form "B" the jury assessed punitive damages against Cooper in the amount of $3.5 million, against Bitting in the amount of $340,000.00 and against Allied in the amount of $3 million.

The trial court entered judgment. The court awarded plaintiffs, Sequa and SESI, compensatory damages in the amount of $487,000.00 on their fraud claim against Cooper, Bitting, and Allied and on their conspiracy to defraud and breach of fiduciary duty claims against Cooper and Bitting. The court also awarded both plaintiffs punitive damages in the following amounts: $3,500,000.00 against Cooper, $340,000.00 against Bitting, and $3,000,000.00 against Allied. Defendants appeal from this judgment.

In their first point, defendants contend that the trial court erred in denying their motion to strike Sequa as a plaintiff and in submitting Sequa's claims to the jury. They argue that Sequa lacked standing to sue because it was merely a stockholder of SESI.

 If a party lacks standing to sue, the court does not have jurisdiction of the question presented. *Warren v. Mercantile Bank of St. Louis, N.A.,* 11 S.W.3d 621, 622 (Mo.App. E.D.1999). The lack of subject matter jurisdiction may be raised at any time during the proceeding, even for the first time on appeal. *Id.*

 A shareholder is without standing to sue in his individual capacity for damages to the corporation. *Warren,* 11 S.W.3d at 622. In *Warren,* the Warrens were sole owners of all of the stock of American Lifestyle Homes, Inc. (ALH), a business that sold mobile homes. In his capacity as corporate president, Mr. Warren discussed with a vice-president of Mercantile Bank a financial restructuring for

ALH to restore its liquidity. *Id.* As a result of certain promises made by the vice-president, the Warrens invested their own money in ALH. *Id.* at 622–623. This court affirmed the grant of summary judgment in favor of Mercantile Bank, because plaintiffs as shareholders lacked standing to sue individually. *Id.* at 623. This court concluded that "any alleged misrepresentations were made to ALH and not to Mr. Warren as an individual and any resulting damages were sustained by ALH and not by the Warrens individually." *Id.* The court further held, "[M]isrepresentation claims based on an agreement between two corporations and/or statements made to the officers or sole shareholders of a corporation belong to the corporation, not the individual officers or sole shareholders." *Id.*

In *Jones v. Rennie,* 690 S.W.2d 164 (Mo. App.1985), this court reversed a judgment for plaintiff Jones, who was president and 100 percent shareholder of Tom Sawyer Enterprises, Ltd. (TSE), for lack of standing. Jones alleged that he could not obtain financing because of defendant Mercantile Trust Co.'s wrongful acts. *Id.* at 166. This court concluded that Jones could not bring a fraudulent misrepresentation claim against defendant because defendant's dealings were with Jones in his capacity as president and 100 percent shareholder of TSE and not in his individual capacity. *Id.* This court reasoned that all of the damages sustained from the misrepresentation were sustained by TSE and not by Jones individually, even though he owned 100 percent of the stock. *Id.*

Here, Sequa was a 100 percent owner of all the shares of stock in SESI. As such, it lacked standing to sue for defendants' alleged misconduct. SESI was the corporation who suffered damage as a result of defendants' alleged misconduct.

 Plaintiffs counter that Sequa was a proper plaintiff because Sequa had a "joint

interest" in the debt represented by the promissory note. We disagree. Here, Sequa was not a payee on the note. SESI owned the note and all payments were due from Sturm Products to SESI. That the payments to SESI ultimately were passed on to Sequa is not relevant to Sequa's standing to sue, but only represented how the finances were handled internally by Sequa and SESI. Sequa's tangential economic interest does not confer standing to sue. In *Warren*, 11 S.W.3d at 622–623, this court found no standing to sue the bank, despite the Warrens' investing approximately $118,000.00 of their personal capital in reliance upon the representations of the bank's vice-president.

The trial court erred in denying defendants' motion to strike Sequa as a plaintiff. Defendants' first point is granted.

We discuss defendants' remaining points out of order for ease of understanding. In their fourth point, defendants contend that trial court erred in submitting Instructions Nos. 6, 9, and 10 to the jury, because SESI did not make submissible cases of fraud against Cooper, Bitting, and Allied and of conspiracy to defraud against Cooper and Bitting. We note that in view of our holding under Point I that Sequa was not a proper party to the present action, we do not consider Instruction Nos. 6 and 9 as they relate to Sequa and we do not consider Instruction No. 10 at all, because it related solely to Sequa.

Instruction No. 6 concerns SESI's claim of fraud against Bitting, Cooper, and Allied. The elements of fraud are (1) a representation, (2) the falsity of the representation, (3) the materiality of the representation, (4) the speaker's knowledge of the falsity of the representation or the ignorance of its truth, (5) the speaker's intent that the representation be acted upon by the hearer and in the manner reasonably anticipated, (6) the hearer's ignorance of the falsity of the representa-

tion, (7) the hearer's reliance on the truth of the representation, (8) the hearer's right to rely thereon, and (9) the hearer's consequent and proximately caused injury. *Hyatt v. Trans World Airlines, Inc.*, 943 S.W.2d 292, 295 (Mo.App. E.D.1997). Instruction No. 9 involves SESI's claim for conspiracy to defraud. The elements of an unlawful conspiracy are (1) two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful overt acts, and (5) damages as a result thereof. *Dickey v. Johnson*, 532 S.W.2d 487, 502 (Mo.App.1975). Defendants argue that both of these claims fail because SESI's fraud claim fails. They contend that SESI knew that Bitting's representation regarding refinancing was false and thus did not have a right to rely on the representation in agreeing to discount the promissory note. They assert that Dowling became aware in the summer of 1995 that the transaction between Sturm Products and Sulzer was not a refinancing; and that as SESI's agent, his knowledge was imputed to SESI.

A corporation can obtain knowledge only through its officers or agents and the knowledge of an agent of a corporation with reference to a matter within the scope of his authority and employment and to which his authority or employment extends is imputed to the corporation. *Southwest Bank of Polk County v. Hughes*, 883 S.W.2d 518, 522 (Mo.App. S.D.1994). Knowledge of an agent with regard to any business over which his authority reaches is notice, or knowledge, of the principal. *Id.* The recognized exception to this rule is when the agent is acting adversely to the principal's interest. *Lumbermens Mut. Cas. Co. v. Thornton*, 92 S.W.3d 259, 270 (Mo.App. W.D.2002).

Here, the evidence was that when Bitting approached Dowling about seeking a discount on the promissory note, he told

her to talk to Quicke, the president of SESI, because she and Cooper had put him in conflict. Quicke was the person who represented SESI in negotiating with Bitting to discount the note and in deciding to discount the note. Bitting told Quicke that it was a refinancing and said that although it might look like a sale, it was not. Dowling's involvement in discounting the note was limited to preparing the paperwork. He was not involved in any decision to discount the note, and in fact told Bitting to deal with Quicke in the matter. Although prior to closing Cooper told Dowling that the transaction was a joint venture and not a refinancing, such knowledge was beyond the scope of his authority in discounting the note. Dowling did not become aware that the transaction actually was a sale until after the closing in October 1995.

In addition, even assuming that Dowling was acting as an agent for SESI, his knowledge could not be imputed to SESI. Dowling was in a position to benefit financially from the sale of the assets of Sturm Products. He therefore was acting adversely to the interests of SESI, which prevented his knowledge from being charged to his principal.

Knowledge that the transaction between Sulzer and Sturm Products was not a refinancing cannot be imputed to SESI. SESI made submissible claims for fraud and conspiracy to commit fraud. Defendants' fourth point is denied.

Returning to their second point, defendants charge error in the trial court's entering judgment in favor of SESI for punitive damages. Here, Instruction No. 12 was the instruction relating to punitive damages and it specifically referred to Sequa as the sole party seeking punitive damages. No instruction authorized the jury to find that SESI was entitled to punitive damages. The jury's verdict for punitive damages in SESI's favor was contrary to Instruction No. 12. In light of our holding under Point I that Sequa was not a proper party to the action, the judgment for punitive damages in its favor necessarily fails. The trial court did commit error when it entered judgment in favor of Sequa and SESI for punitive damages. Defendants' second point is granted.

In their third point, defendants assert that the trial court erred in submitting Count III, the conflict of interest/breach of fiduciary claim, to the jury. The claim was submitted to the jury in Instruction No. 10. Again, that instruction referred only to Sequa and did not mention SESI. In view of our holding under point one that Sequa was not a proper party to this action, the trial court erred in submitting that instruction to the jury. Defendants' third point is granted.

In their fifth point, defendants challenge the trial court's award of prejudgment interest. SESI counters that it was entitled to interest because it lost the use of $250,000.00 over a seven-year period.

Section 408.020 RSMo 2000 authorizes interest "for all moneys after they become due and payable, on written contracts, and on accounts after they become due and demand of payment is made; for money recovered for the use of another, and retained without the owner's knowledge of the receipt, and for all other money due or to become due for the forbearance of payment whereof an express promise to pay interest has been made." In the case before us, however, SESI's cause of action did not fall into one of the categories for which section 408.020 authorized interest. SESI did not sue either to enforce the promissory note or to rescind the agreement to discount the note. SESI's action was in fraud and conspiracy to commit fraud and thus sounded in tort.

Section 408.040.2 RSMo 2000 governs prejudgment interest in tort cases and provides as follows:

In tort actions, if a claimant has made a demand for payment of a claim or an offer of settlement of a claim, to the party, parties or their representatives and the amount of the judgment or order exceeds the demand for payment or offer of settlement, prejudgment interest ... shall be calculated from a date sixty days after the demand or offer was made, or from the date the demand or offer was rejected without counter offer, whichever is earlier. Any such demand or offer shall be made in writing and sent by certified mail and shall be left open for sixty days unless rejected earlier. Nothing contained herein shall limit the right of a claimant, in actions other than tort actions, to recover prejudgment interest as otherwise provided by law or contract.

Here, SESI made no demand for payment and did not make an offer of settlement. Thus, SESI did not comply with the statute, with the result that it was not entitled to prejudgment interest. The trial court erred in awarding prejudgment interest. Defendants' fifth point is granted.

In their sixth point, defendants contend that the trial court erred in submitting punitive damages to the jury. Under point two, we determined that the punitive damage instruction was submitted only as to Sequa and that no instruction authorized the jury to award punitive damages to SESI. As such, we need not address this issue because there was no punitive damage award in favor of SESI. Point six is moot.

In their seventh point, defendants argue that the trial court erred in submitting Verdict Form A to the jury because it required a finding as to both plaintiffs, Sequa and SESI, without regard to how much each was damaged, and did not provide for a submission for damages against each defendant. Verdict Form A required the jury to find either in favor of plaintiffs, Sequa and SESI, or in favor of defendants, Bitting, Cooper, and Allied.

It was not necessary for the court to submit damages as to each defendant. Here, Instruction No. 7 submitted to the jury Bitting's agency relationship with Cooper and Allied and Instruction No. 8 required the jury to find Cooper and Allied responsible for the misrepresentations of Bitting made within the scope and course of her agency. Based on the agency relationship between Bitting and Cooper and Allied, they all were responsible for Bitting's misrepresentations and were therefore joint tortfeasors in perpetrating the fraud. There can be only one final judgment in a cause and the judgment against joint tortfeasors must be for a single amount and cannot be split up. *Chambers v. McNair*, 692 S.W.2d 320, 324 (Mo.App. E.D.1985). To submit separate verdict forms against separate defendants would permit the plaintiff a multiple recovery for the same damages arising out of a single occurrence, particularly in cases where there were not varying degrees of culpability. *Id.* Missouri's rule as to compensatory damages in tort actions is that all who are guilty of participating in the wrong-doing are jointly and severally liable for the entire damage, and the judgment must be in one amount and against all defendants who are not discharged. *Id.* Here, Verdict Form A required the jury to enter one amount of compensatory damages if it found against all the defendants. The jury entered the single amount of $250,000.00, plus $237,000.00.

It also was not necessary to submit as to each plaintiff, because the same facts applied equally to each plaintiff and a single damage was sustained. Thus, there was one cause of action and one recovery. In the first point, we held that the damage was sustained only by SESI and that Se-

qua was not a proper party to the action, with the result that only SESI is entitled to recover damages. Defendants therefore were not prejudiced by the submission of damages as to both plaintiffs. The trial court did not err in submitting Verdict Form A to the jury. Defendants' final point is denied.

The judgment in favor of SESI for actual damages in the amount of $250,000.00 is affirmed. The judgment in favor of SESI for pre-judgment interest is reversed. The judgment in favor of Sequa for actual damages and for pre-judgment interest is reversed. The judgment in favor of SESI and Sequa for punitive damages is reversed.

CLIFFORD H. AHRENS, P.J., and LAWRENCE E. MOONEY, J.: Concur.